Filed 10/21/16 opinion on rehearing

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| In re ALEXANDER P., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>HEIDI S., et al.,<br><br>      Defendants and Appellants;<br><br>MICHAEL P., et al.,<br><br>      Appellants. | A146040<br><br>(San Francisco City & County Super. Ct. No. JD15-3101) |
| In re ALEXANDER P., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>HEIDI S., et al.,<br><br>      Defendants;<br><br>MICHAEL P.,<br><br>      Appellant. | A146595<br><br>(San Francisco City & County Super. Ct. No. JD15-3101) |

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I.B. and II.D.

Alexander P. (minor), then three years old, became the subject of a dependency petition after his stepfather, Donald Q. (Donald) assaulted his mother, appellant Heidi S. (Mother), in the minor's presence. At the time of the filing of the dependency petition, the minor's paternity was the subject of separate family court proceedings filed by two other men, appellants Michael P. (Michael) and Joel D. (Joel). Joel is the minor's biological father, while Michael is the man with whom Mother was living at the time of the minor's birth. Two weeks after the filing of the dependency petition, the family court ruled that both Michael and Joel qualify as presumed parents and designated both under Family Code[1] section 7612, subdivision (c), which authorizes multiple presumed parents.

When the juvenile court inquired into the minor's paternity during the initial stages of this dependency proceeding, all three men sought to be declared the minor's presumed parent. Michael and Joel based their claims on the family court's order, while Donald provided evidence that he had, as a practical matter, served in the role of the minor's father for the 20 months prior to his assault on Mother. Considering itself bound by the family court's order, the juvenile court found both Michael and Joel to be presumed parents. The court also found that Donald satisfied the requirements for presumed parent status and designated him as well, pursuant to 7612, subdivision (c).

Michael and the minor have appealed the designation of Donald as a presumed parent, while several of the parties have challenged Michael's designation. In addition, Michael has challenged the juvenile court's subsequent denial to him of visitation with the minor.

We conclude that the juvenile court erred in finding Michael to be a presumed parent. Because Welfare and Institutions Code section 316.2 grants exclusive jurisdiction over paternity issues to the juvenile court upon the filing of a dependency petition, the family court order on which the juvenile court relied, issued subsequent to the filing, was void. We vacate the juvenile court's designation of Michael as a presumed parent and remand to the juvenile court for an independent determination of his request for

---

[1] All statutory references are to the Family Code unless otherwise specified.

presumed parent status.  We find no error in the designation of Donald as a presumed parent, which was supported by substantial evidence.  Finally, we vacate the juvenile court's order denying visitation to Michael and remand for reconsideration of his request in the event the court designates Michael as a presumed parent.

## I.  BACKGROUND

### A. *Presumed Parent Proceedings*

The minor was conceived during an intermittent, three-year relationship between Mother and Michael, but neither believed Michael to be the child's biological father.  When Mother informed Joel, whom she believed to be the father, of her pregnancy, Joel told her he was not ready for fatherhood and expressed concern about her decision not to abort the fetus.  Mother thereafter ceased communication with Joel for well over a year.

Notwithstanding Michael's belief he was not the child's father, he remained in the relationship with Mother throughout her pregnancy, intending to raise the child as his own.  Michael was present at the birth in February 2012, executed a voluntary declaration of paternity, and was identified as the minor's father on the birth certificate.  During much of the first year of the minor's life, Michael lived with Mother, held himself out as the minor's father, and was characterized by Mother as " 'very attentive' " to the infant.

From before the minor's birth, the relationship between Mother and Michael was characterized by oppressive domestic violence.  In January 2013, prior to the minor's first birthday, a criminal protective order issued to protect Mother from Michael.  He was arrested for a separate act of domestic violence against her two months later and eventually suffered a misdemeanor conviction.  A year later, in April 2014, another restraining order was granted in favor of Mother against Michael.  She remained fearful of him long after.

At the time the first restraining order was entered, Michael filed a petition for custody of the minor.  He and Mother eventually entered into a mediated stipulation providing for joint legal and physical custody and allowing Michael substantial visitation with the minor.  But after entry of the April 2014 restraining order, Mother was granted sole legal and physical custody of the minor, and Michael was restricted to twice weekly

3

supervised visits. Reports of the supervised visits found a loving and appropriate relationship between the minor and Michael, except Michael badgered the minor to refer to him as "Daddy." As will be discussed below, the supervised visits were later terminated by the family court.

In the meantime, in late 2013, Joel was given an opportunity to become involved in the minor's life and submitted to a DNA test, which confirmed he is the minor's biological father. Beginning in September 2013 and continuing to the present day, Mother has permitted Joel to have weekly visits with the minor, during which they have spent time together reading, talking, exploring, and playing in the park. In April 2014, Joel filed an action to establish his paternity.

In July 2013, Mother began living with Donald, whom she had known since high school. They married in August 2014. Within their household, it is acknowledged that Donald is not the minor's biological father, and Donald respects Joel's role in the minor's life. Nonetheless, Donald has assumed "the day-to-day physical and emotional responsibilities" of a father since he began living with Mother and the minor. Donald changed the minor's diapers and participated in his potty training, feeds and clothes him, puts him to sleep, and engages in typical parent-child play activities. Donald believes he treats the minor as his own child and is in turn regarded by the minor "as his psychological parent." By early 2015, the minor alternated between referring to Donald as "Don" and "Daddy," without coaching from Donald. Donald has introduced the minor to his extended family, who "have embraced [the minor] and accepted him into our family," and the minor has become "the center of attention at [Donald's] family functions." In a report prepared for the family court around June 2014, appointed counsel for the minor found the minor to be "most comfortable" in the care of Donald, rather than Michael or Joel.[2]

---

[2] Michael contends the juvenile court could not consider this report because "counsel's statements are not evidence." While this is true when an attorney is acting in the role of an advocate, the report in question was rendered by counsel acting in the role of a witness. (See Rules Prof. Conduct, rule 5-200(E).) In any event, the juvenile court

Although Michael was not a party to Joel's paternity proceeding and Joel was not a party to Michael's custody proceeding, the family court conducted a joint hearing in the two proceedings on August 14, 2014. The joint hearing addressed two separate motions: a motion by Michael to compel Mother's compliance with the order granting him supervised visitation and Joel's motion for an order of paternity. Mother and Joel appeared in pro. per. for the hearing, but Michael did not attend because of a misunderstanding with respect to scheduling. Following the hearing, in a document entitled "Findings and Order After Hearing" (August 2014 order), the family court set aside Michael's voluntary declaration of paternity, denied his claim of presumed parent status, vacated his visitation order, declared Joel to be a presumed parent, and awarded joint legal custody to Mother and Joel. The August 2014 order was filed in Michael's custody proceeding. The family court also prepared a document entitled "Judgment" (August 2014 judgment), which was entered in Joel's paternity proceeding. The August 2014 judgment is a preprinted form, to which the court attached the August 2014 order.[3] With respect to a line item in the preprinted judgment stating "THE COURT FURTHER ORDERS," the family court stated, "See [the August 2014 order]."

Less than a month later, Michael filed a request to set aside the orders entered in his absence and declare him to be the minor's legal father. Although Michael's request was filed in September 2014, the family court did not conduct an evidentiary hearing on the request until March 6, 2015. Following that hearing, in an order entered on March 17, 2015 (March 2015 order), the court vacated most of the orders entered after the August 2014 hearing and took "the issue of paternity for both [Michael] and [Joel]

is entitled to consider certain types of hearsay evidence (Welf. & Inst. Code, § 355), and Michael fails to demonstrate he objected to the consideration of this report below (*In re E.B.* (2010) 184 Cal.App.4th 568, 577).

[3] The docket sheets for these two proceedings, which are included in the appellate record, contain entries for the August 2014 order and the August 2014 judgment, but neither document is a part of the appellate record. We have obtained copies of both documents from the superior court and take judicial notice of them.

under submission." The March 2015 order, however, expressly preserved the finding of presumed parent status for Joel and the suspension of Michael's visitation.[4]

Prior to any further ruling by the family court, on March 30, 2015, the San Francisco Human Services Agency (Agency) filed a dependency petition in connection with the minor. The petition alleged the minor, then three years old, was at risk of harm due to domestic violence in Mother's home. (Welf. & Inst. Code, § 300, subd. (b)(1).) According to the Agency's jurisdictional report, Donald, while intoxicated, had attacked Mother. With the minor watching from a hallway, Donald climbed on top of Mother and began striking her face, pulling her hair, and attempting to choke her. In tears, the minor rushed forward and attempted to pull Donald off. Donald was later arrested on domestic violence charges, and a restraining order was entered. The petition alleged this was only the most recent of five separate incidents of domestic violence by Donald against Mother.

Two weeks after the dependency petition was filed, on April 15, the family court consolidated the proceedings filed by Michael and Joel, and issued a statement of decision, findings and order, and two judgments, finding both Joel and Michael to be presumed parents of the minor.[5] Although recognizing that Michael's voluntary declaration of paternity could be set aside, the family court declined to do so because the minor "has formed an attachment and strong relationship with [Michael] in his first years of life" and Michael "seeks to continue his relationship with the child," which the court found to be in the minor's "best interest." The court found that Joel was the minor's biological father and noted that through weekly visits Joel had formed a companionable relationship with the minor. The court declined to choose between them, finding the minor would suffer detriment if either was not declared to be a presumed parent. (§ 7612, subd. (c).) The court also reinstated Michael's supervised visitation and entered

---

[4] The Agency has filed a request to take judicial notice of the March 2015 order, which is not included in the appellate record. We grant that request.

[5] Only the family court's statement of decision is included in our appellate record. We have obtained a copy of the findings and order and the two judgments from the superior court and take judicial notice of them. The four rulings together will be referred to as the family court's "April 2015 order."

6

judgments designating both men as the minor's father. So far as we are aware, none of the family court rulings were appealed.

Soon thereafter, the juvenile court scheduled a hearing in the dependency proceedings "for status of Parentage." Prior to the hearing, Michael, Joel, and Donald all filed requests to be declared the minor's father. Michael also sought an order of visitation. In support of his request for presumed parent status, Donald submitted a declaration describing his relationship with the minor and stating that although he was required by a domestic violence restraining order to live apart from Mother and the minor, he intended to reunite with them when permitted to do so and to "remain[] [the minor's] father for the rest of his life."

On August 17, 2015, the juvenile court found Michael and Joel to be presumed parents on the basis of the family court's April 2015 order, deeming itself bound by that order. The court also found Donald to satisfy the requirements for presumed parent status and declared him to be the minor's third presumed parent, concluding it would be detrimental to the minor "to limit this child's parentage to mother, [Joel], and [Michael]." The court deferred a ruling on Michael's request for visitation, directing the parties to address it at a hearing scheduled for two days later.

At that hearing, the parties stipulated to an amended jurisdictional allegation. The juvenile court declared the minor to be a dependent and permitted him to remain with Mother, with the Agency directed to provide family maintenance services. The court also arranged to schedule separate trials on the issue of visitation for Michael and Donald and, in the meantime, directed both of them to mediation on the issue.

**B.** *Michael's Visitation*

In September 2015, the Agency filed an interim report recommending a denial of visitation to Michael.[6] The recommendation appears to have been based on an interview

___

[6] Because we have consolidated Michael's two appeals, we include a description of the events following the juvenile court's August hearings, since these later events are relevant to Michael's appeal of the denial of visitation. We accept Michael's contention

7

with Mother, who told the Agency that Michael had, at one time, stalked her and threatened to kidnap the minor. Mother also claimed to have a video recording of Michael shaking the minor and yelling at him, although she did not produce the video to the Agency, and she believed Michael did not have a relationship with the minor because he had not been permitted visitation for an extended period of time. The Agency's recommendation also purported to be "based off of a detriment finding made in Family Court," an apparent misunderstanding of the family court's ruling, which found, to the contrary, that the minor would suffer detriment if Michael was *denied* contact with him. An addendum report filed a week later related the opinion of a consulting psychologist that it would be detrimental to the minor to visit with Michael, due to the effects on the minor of Michael's past domestic violence toward Mother. The psychologist reasoned the minor's exposure to domestic violence committed against Mother during the minor's first six months of life caused high levels of stress, resulting in a "toxic effect" on the minor's brain. For this reason, the psychologist believed the minor would continue to associate Michael with "ongoing danger" to Mother.

A contested hearing on Michael's visitation was held on October 19, 2015. Three social workers testified in support of the Agency's recommendation to deny visitation to Michael. The first two social workers largely reiterated the matters disclosed in the Agency's reports recommending denial of visitation. The third social worker had obtained the opinion of the consulting psychologist, summarized in the addendum report. She testified the opinion was rendered in the course of a 55-minute meeting, which also addressed visitation by Donald. In making the recommendation, the psychologist had reviewed none of the documents prepared in connection with the matter, such as the reports from Michael's visits with the minor and the family court decision, and had not talked to any of the parties, relying entirely on the verbal account of the situation provided by the social workers present at the meeting. The psychologist was out of the

that the facts developed at the hearings should not be considered in evaluating the validity of the juvenile court's presumed father determinations.

8

country at the time of the hearing and did not testify. Mother also testified, reiterating the matters discussed in her interview with the Agency.

The juvenile court denied visitation to Michael, finding by clear and convincing evidence, based on the opinion of the consulting psychologist, that visitation with Michael would be detrimental to the minor. In effect, the court concluded it was bound by the psychologist's opinion because Michael had not offered expert testimony to refute the opinion and noted the psychologist's opinion was "the only evidence I have in regards to the reason for the Agency's not going forward with visitation."

## II. DISCUSSION

Michael, Mother, Joel, and the minor have each appealed certain of the juvenile court's parentage rulings. Michael and the minor contend the court erred in finding Donald a presumed parent, while Mother, Joel, and the minor contend the court erred in finding Michael to be a presumed parent. In addition, Michael filed a separate notice of appeal from the court's order denying him visitation. We have consolidated all appeals for argument and decision.

### A. *Presumed Parentage Generally*

" 'Presumed father status is governed by section 7611, which sets out several rebuttable presumptions under which a man may qualify for this status, generally by marrying or attempting to marry the child's mother or by publicly acknowledging paternity and receiving the child into his home. [Citations.] Biological fatherhood does not, in and of itself, qualify a man for presumed father status under section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, rather than any biological connection." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018 (*J.L.*).)[7] The purpose of presumed parentage, in the dependency context, is

---

[7] Since our decision in *J.L.*, section 7611 has been amended to refer to a presumed "parent" rather than "father," recognizing that the second parent of a child may be female as well as male. (Stats. 2013, ch. 510, § 3; e.g., *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 125 [female domestic partner of child's biological mother may qualify as a presumed parent under section 7611].)

"[t]o identify [persons] who, by reason of their parenting relationship, are entitled to seek reunification services and custody." (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 802 (*Jerry P*).) The "elevated status" of presumed parenthood is intended to " 'distinguish those who have demonstrated a commitment to the child regardless of biology.' " (*Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 377 (*Martinez*).)

If the child's biological mother and the potential presumed parent were not married or did not attempt to marry around the time of the child's birth, presumed parent status must be demonstrated through section 7611, subdivision (d), which requires, "The presumed parent receives the child into his or her home and openly holds out the child as his or her natural child." In general terms, the requirements of subdivision (d) are intended to describe a person who has established a "parent-child" or "familial" relationship with the child. (*Jason P. v. Danielle S.* (2014) 226 Cal.App.4th 167, 178.) To qualify under subdivision (d), a person must have a "fully developed parental relationship" with the child. (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 776, italics omitted (*R.M.*).) It is not enough to demonstrate "only a caretaking role and/or romantic involvement with a child's parent." (*Id.* at p. 777.) Rather, the presumed parent must demonstrate " 'a full commitment to his [or her] paternal responsibilities—emotional, financial, and otherwise.' " (*Jerry P.*, *supra*, 95 Cal.App.4th at pp. 801–802, fn. omitted.) While the juvenile court may consider a wide range of factors in making a presumed parent determination, as appropriate to the circumstances (see, e.g., *In re T.R.* (2005) 132 Cal.App.4th 1202, 1211 (*T.R.*)), the core issues are the person's established relationship with and demonstrated commitment to the child. (E.g., *Martinez, supra*, 246 Cal.App.4th at pp. 384–385 [" ' "[T]he premise behind the category of presumed [parent] is that an individual . . . has demonstrated a commitment to the child and the child's welfare . . . ." ' "]; *In re D.M.* (2012) 210 Cal.App.4th 541, 553 [presumed parent must be " 'someone who has demonstrated an abiding commitment to the child and the child's well-being' " and has " 'entered into a familial relationship with the child' "]; *Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 377, disapproved on other

10

grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7 [requires demonstrated " 'commitment' "].)

In *J.L.*, we noted, "[o]ccasionally the complicated pattern of human relations gives rise to more than one legitimate claimant to presumed father status, and the juvenile court must resolve the competing claims. . . . '[A]lthough more than one individual may fulfill the statutory criteria that give rise to a presumption of paternity, "there can be only one presumed father." ' " (*J.L., supra*, 159 Cal.App.4th at p. 1019.) Human relations have become no less complicated since 2008, but it is no longer true that a child is permitted only one presumed parent. In 2013, the Legislature amended section 7612, which governs the resolution of presumed parent claims, to permit the designation of more than one presumed parent. (Stats. 2013, ch. 564, § 6.) Prior to the amendment, section 7612 stated, " '(a) . . . a presumption under Section 7611 is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence. [¶] (b) If two or more presumptions arise under Section 7611 which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls.' " (*J.L.*, at p. 1019.) Although this language remains in the statute, the amendment inserted a new subdivision (c) that allows the court to declare more than one presumed parent if it concludes "recognizing only two parents would be detrimental to the child."[8] The allowance of more than one presumed parent under subdivision (c) is intended to be reserved for " 'rare cases' where a child truly has more than two parents." (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1087 (*Donovan L.*).)

---

[8] Section 7612, subdivision (c) provides, as pertinent: "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time."

11

**B.** *Presumed Parent Status of Michael and Joel*

Joel, Mother, and the minor have all appealed the designation of Michael as a presumed parent, arguing the juvenile court erred in concluding it was bound by the family court's April 2015 order because that court, by the time it ruled, no longer had subject matter jurisdiction over the issue of paternity. We agree.[9]

Section 7630 permits certain persons with a specified relationship to a child to bring an action in family court to determine the existence of presumed parent status under section 7611. (§ 7630, subds. (a)–(c).) Once a dependency petition has been filed, however, Welfare and Institutions Code section 316.2 vests the court hearing the dependency petition with exclusive responsibility for determining the identity of presumed parents, stating, "After a petition has been filed to declare a child a dependent of the court, and until the time that the petition is dismissed, . . . the juvenile court which has jurisdiction of the dependency action shall have exclusive jurisdiction to hear an action filed under Section 7630 or 7631 of the Family Code."[10] (Welf. & Inst. Code, § 316.2, subd. (e).) This grant of jurisdiction is confirmed by California Rules of Court, rule 5.510(c)(1)(B), which similarly vests exclusive jurisdiction in the juvenile court over "[a]ll issues and actions regarding the parentage of the child under . . . Family Code section 7630." In furtherance of this jurisdictional grant, the juvenile court is required to conduct an inquiry into the identity of potential assumed and alleged fathers immediately upon the filing of a dependency petition.[11] (Welf. & Inst. Code, § 316.2, subd. (a).)

_____

[9] Michael argues the parties have forfeited this issue by failing to raise it below. While the parties opposed the juvenile court's adoption of the family court ruling regarding Michael, they failed to raise the specific issue of lack of jurisdiction in the family court. Because the family court's jurisdiction is a significant issue of law going to the legal foundation for the juvenile court's order, we exercise our discretion to consider it. (See, e.g., *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1500–1501.)

[10] Section 7631 was repealed effective January 1, 2011 (Stats. 2010, ch. 588, § 2), notwithstanding the continued reference in Welfare and Institutions Code section 316.2.

[11] Welfare and Institutions Code section 316.2, subdivision (a) requires the fatherhood inquiry to be made at the detention hearing "or as soon thereafter as

The juvenile court's exclusive jurisdiction over parentage issues, once a Welfare and Institutions Code section 300 dependency petition has been filed, was recognized by our Supreme Court in *In re Jesusa V.* (2004) 32 Cal.4th 588, in which the court noted: "The juvenile court where the dependency petition is pending shall have exclusive jurisdiction to hear that action from the time the petition is filed until the petition is dismissed, the dependency is terminated, or parental rights are terminated. [Citation.] Alternatively, the juvenile court itself 'may make such a determination' even if no action is filed under Family Code section 7630. [Citation.] . . . [¶] . . . Indeed, subdivision (e) of Welfare and Institutions Code section 316.2 endows the juvenile court with exclusive jurisdiction to hear the paternity action at *any* time while the petition is pending." (*Id.* at p. 620.) As the court explained, "inasmuch as a dependency action could eventually result in the termination of parental rights, a court needs first to know the identities of the parents. The legal parents must be identified so that they may receive notice of the hearing; be provided counsel, if necessary; and be accorded a meaningful opportunity to be heard." (*Ibid.*; see similarly *In re Kaylee H.* (2012) 205 Cal.App.4th 92, 102 ["Once a petition has been filed under [Welfare and Institutions Code] section 300, the juvenile court has exclusive jurisdiction of . . . all issues and actions regarding paternity of the child."].) The grant of exclusive jurisdiction "ensure[s] the predominance of the dependency laws in the event an action to establish a parent-child relationship action converges with a dependency proceeding." (*In re Joshua R.* (2002) 104 Cal.App.4th 1020, 1027–1028.) The juvenile court is similarly granted " 'sole and exclusive jurisdiction' " over issues of custody, visitation, and guardianship upon filing of a dependency petition. (*A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1388–1389; Welf. & Inst. Code, § 304.)

The necessary effect of a grant of exclusive subject matter jurisdiction in one judicial body is to divest all other bodies of such jurisdiction. (*El Rancho Unified School*

practicable." By statute, the detention hearing must occur "before the expiration of the next judicial day" after filing of the petition. (Welf. & Inst. Code, § 315.)

*Dist. v. National Education Assn.* (1983) 33 Cal.3d 946, 952–953, 961; *Wilson v. Southern California Edison Co.* (2015) 234 Cal.App.4th 123, 143.) Accordingly, once a juvenile court acquires exclusive jurisdiction over parentage issues by the filing of a dependency petition, every other court is simultaneously divested of any jurisdiction it might otherwise have over such issues. For that reason, the family court hearing Joel's and Michael's consolidated paternity/custody actions was divested of jurisdiction over paternity issues as of March 30, 2015, when this dependency proceeding was commenced. As a result, by the time the family court issued its April 2015 order on presumed parent status, it no longer had subject matter jurisdiction over the minor's paternity and visitation. The family court's rulings on these issues were therefore of no legal effect, and the juvenile court's conclusion that it was required to adopt the family court's findings was erroneous. (*Wilson*, at p. 143 [judgment entered by court lacking subject matter jurisdiction is void]; *In re Antoinette* (2002) 104 Cal.App.4th 1401, 1409–1410 [when a court acts without subject matter jurisdiction, the action is void].) Because the juvenile court stated no ground for its presumed parent finding as to Michael other than the supposed binding effect of the family court's order, we must vacate the juvenile court's finding of presumed parent status for Michael and remand to the juvenile court for resolution of his request independent of the family court's ruling.[12]

Michael argues the juvenile court was bound by the family court's judgment finding him to be a presumed father under the doctrines of collateral estoppel and res judicata. Both of those doctrines are premised on the assumption that the judgment for which preclusive effect is sought was rendered by a court of competent jurisdiction. Judgments that are void for lack of " 'jurisdiction in the fundamental sense, i.e., of the subject matter and the parties' " have no preclusive effect. (*People v. American*

---

[12] The juvenile court made no finding with respect to detriment if Michael were not found to be a presumed parent (§ 7612, subd. (c)), presumably viewing itself to be bound by the detriment finding of the family court. Should the juvenile court find on remand that Michael qualifies as a presumed parent, it should proceed to consider the issue of detriment under section 7612, subdivision (c), assuming there is more than one person qualified for presumed parent status.

14

*Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661; *People v. Kim* (2012) 212 Cal.App.4th 117, 125 [" 'The doctrine of res judicata is inapplicable to void judgments. "Obviously a judgment, though final and on the merits, has no binding force and is subject to collateral attack if it is wholly void for lack of jurisdiction of the subject matter or person . . . ." ' "].) The family court's lack of subject matter jurisdiction at the time its judgment was entered prevents the judgment from having preclusive effect.[13]

Joel and the Agency argue we need not remand for an independent consideration of Michael's request for presumed parent status because there is no substantial evidence to support such a finding, but we are unwilling to address that issue before the juvenile court has had an opportunity to do so. For the same reason, we also decline to address the significance, if any, of Michael's voluntary declaration of paternity. The various issues bearing on Michael's presumed parent status must be resolved in the first instance by the juvenile court.

Our conclusion unavoidably calls into question the presumed parent status of Joel, since the reasoning that requires us to vacate the finding as to Michael applies with equal force to Joel. If the juvenile court erred in designating Michael a presumed parent on the basis of the April 2015 order, it also erred in designating Joel. Initially, none of the parties challenged the juvenile court's finding that Joel is a presumed father of the minor. After we sought supplemental briefing on the issues,[14] Michael argued the juvenile court's order as to Joel should be vacated because "no other evidence exists in the appellate record to support" the designation. The remaining parties contended the two men are distinct because Joel, unlike Michael, was declared to be a presumed father in orders and a judgment rendered by the family court at a time when it had jurisdiction over

---

[13] Michael also argues it would be inequitable, unfair, or bad public policy to disregard the family court's judgment. In light of the clear statutory directive that issues of paternity must be litigated in the context of a dependency proceeding, once the proceeding is filed, we have no equitable discretion in the matter.

[14] We not only sought supplemental briefing during our original consideration of this matter, we also granted Joel's petition for rehearing on the issue, which was decided against him in our original decision.

15

the issue, in August 2014 and March 2015. Accordingly, they reason, the juvenile court's reliance on the April 2015 order constituted harmless error because the court would have been bound by these earlier orders.

The doctrines of res judicata and collateral estoppel prevent the parties from relitigating Joel's status if the family court's presumed parent finding had been reduced to a " ' "final judgment on the merits." ' " (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 (*Boeken*).) In the case of paternity proceedings, this common law doctrine is embodied in section 7636, which states, "The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes except for actions brought pursuant to Section 270 of the Penal Code." Reflecting this principle, it is commonly held that a judgment of paternity is entitled to "res judicata effect." (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1065; *City and County of San Francisco v. Stanley* (1994) 24 Cal.App.4th 1724, 1729 [motion to modify child support cannot reopen the issue of paternity once a "final judgment" of paternity has been rendered].)

Given the expansive language of section 7636, we conclude the dependency court was bound by the August 2014 judgment with respect to the issue of Joel's presumed parent status. By attaching a copy of the August 2014 order declaring Joel to be a presumed parent to the August 2014 judgment, the family court effectively rendered a judgment of presumed parent status in favor of Joel. That judgment was entered after an evidentiary hearing and a determination by the family court on the merits of Joel's claim of paternity. When no appeal was taken, the judgment became final. No procedural flaw has been cited in the proceedings that might cast doubt on the outcome or the subsequent use of the judgment.[15] Under section 7636, the judgment of paternity was therefore

_____

[15] According to the docket sheet for Joel's paternity action, Mother and the minor were joined as a parties. In a paternity action, a child under the age of 12, such as the minor, must be represented by a guardian ad litem. (§ 7635, subd. (a).) While the docket sheet does not expressly reflect the appointment of a guardian ad litem, it does contain an order appointing counsel for the minor, who presumably served as guardian ad litem. In any event, the minor supports Joel's designation as a presumed parent, mooting any

16

"determinative for all purposes," presumably including a subsequent dependency proceeding. Accordingly, we conclude that the juvenile court's reliance on the April 2015 order in finding Joel to be a presumed parent was harmless error because the court was, in any event, bound by the finding of presumed parentage in the August 2014 judgment.

It is essential to our decision that no party submitted evidence suggesting the circumstances under which Joel was found to be a presumed parent had changed since entry of the judgment. Judgments are inevitably based on findings of fact about past circumstances. A judgment of presumed parenthood represents a finding that, at the time of entry of the judgment, the person qualified as a presumed parent. With respect to a judgment of biological parenthood, this time dependence is legally irrelevant. Once a biological parent, always a biological parent. Presumed parenthood, in contrast, is based on the personal relationship between adult and child, and personal relationships can change. This is of critical importance to the presumed parenthood determination of a juvenile court, since that court must determine which person or persons stand in the relationship of presumed parent to the child at time of the dependency proceeding. Because a prior judgment of presumed parenthood represents a finding about a past, rather than a present, relationship, it is binding on the juvenile court only if there is no evidence of a change in the relationship between adult and child since entry of the judgment. There being no such evidence here, the juvenile court had no basis for rejecting the judgment with respect to Joel.

Michael argues the August 2014 judgment should be disregarded because the family court, in the March 2015 order, took the issue of Joel's paternity under submission. It is not clear that the family court, having rendered a judgment in Joel's paternity action, possessed jurisdiction to reconsider its decision, as it purported to do. (*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479

procedural flaw that might have affected the enforcement of the paternity judgment with respect to the minor.

17

[entry of judgment normally terminates court's jurisdiction to rule on the merits of a case].)  In any event, while the court purported to take the issue of Joel's paternity under submission, it did not vacate or otherwise withdraw its finding that Joel was a presumed parent.  On the contrary, the court expressly left that finding intact in the March 2015 order.  As a result, even if the court had jurisdiction to modify the judgment of paternity, it did not do so prior to losing jurisdiction over the matter.[16]   Michael also contends the August 2014 judgment is not binding because he was not a party to Joel's paternity proceeding, as required by the doctrine of collateral estoppel.  (*Boeken*, *supra*, 48 Cal.4th at p. 797.)  Whatever the common law requirements of collateral estoppel in these circumstances, section 7636 does not require an identity of parties to make a paternity judgment "determinative for all purposes."  Michael also argues a family law judgment should not be binding in dependency proceedings because "the issues in a family law case [are] never identical to those in a juvenile case," citing *In re Travis C.* (1991) 233 Cal.App.3d 492, 498–503.  *Travis C.* is of no help because, in that case, the court declined to grant collateral estoppel effect to a prior determination because it was not a "final order or judgment."  (*Id.* at p. 499.)  As discussed above, the family court's paternity judgment as to Joel was a final judgment.  In any event, the issue of presumed parent status is governed by the same statute, section 7611, in both family and juvenile courts.  (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1283 [dependency proceedings]; *Kevin Q. v. Lauren W.* (2009) 175 Cal.App.4th 1119, 1130–1131 [paternity proceedings].)[17]

---

[16] For this reason, we deny Michael's request for judicial notice as to family court minutes and a restraining order.  These materials, which purport to demonstrate the family court's intent, are not relevant to our determination.

[17] Michael also contends he would be denied his rights under the voluntary declaration of paternity without due process if Joel's paternity judgment were found binding on the juvenile court.  Michael will, however, have a full opportunity to litigate the significance of his voluntary declaration upon remand in the dependency proceedings.

**C.** *Designation of Donald As a Presumed Parent*

Michael and the minor argue the juvenile court's order designating Donald a presumed parent was not supported by substantial evidence. A person seeking presumed parent status has the burden of demonstrating compliance with the statutory requirements by a preponderance of the evidence. (*R.M., supra*, 233 Cal.App.4th 760, 774.) In turn, we review the juvenile court's finding under the substantial evidence standard. (*Id.* at p. 780.) "We view the evidence in the light most favorable to the ruling, giving it the benefit of every reasonable inference and resolving all conflicts in support of the judgment. [Citation.] We defer to the trial court's credibility resolutions and do not reweigh the evidence. [Citation.] If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling." (*Ibid*.)

### 1. Donald's Qualification for Presumed Parent Status

We find no merit in the argument that Donald failed to demonstrate an entitlement to presumed father status.[18] It is undisputed that Donald can qualify as a presumed parent only under subdivision (d) of section 7611, which requires that the putative presumed parent "receives the child into his or her home and openly holds out the child as his or her natural child." As discussed above, this subdivision requires the person seeking presumed parent status to demonstrate an established parental relationship with the minor and commitment to the minor's well-being. The evidence before the juvenile court demonstrated that the minor and Mother lived with Donald from July 2013, until Donald was removed from the home by a restraining order in March 2015. During this time, Donald acted as the minor's live-in father, taking on the various duties and

---

[18] Donald raises a series of procedural objections to the arguments of Michael and the minor, contending they lack standing to raise the issues or have forfeited their arguments by not raising them below. We have considered Donald's contentions and satisfied ourselves that Michael, at least, has standing and has not forfeited a challenge to Donald's designation as a presumed father. Because we find no merit in the arguments raised by Michael and the minor with respect to Donald, it is unnecessary to discuss the issues of standing and forfeiture in detail.

responsibilities demanded of an infant's parent. According to Donald, he treated the minor as though he were his own child, and the minor had begun to refer to him as "Daddy." In June 2014, the minor was found to be most comfortable in Donald's care, and there is no reason to believe that situation changed through further contact. Although Donald was forced by the restraining order to live apart from the minor and Mother at the time of the presumed parent hearing, he was married to Mother and reaffirmed his commitment to return to her and the minor on a permanent basis. These facts provide substantial evidence to support both the established parental relationship and the commitment required under section 7611, subdivision (d).

Michael contends Donald failed to provide evidence he satisfies the statutory requirement to "openly hold[] out the child as his or her natural child" (§ 7611, subd. (d)) because he has not claimed biological parentage of the minor and admitted in a declaration that he, Mother, and the minor "all acknowledge that [the minor] has a different biological father." Still, compliance with this portion of the subdivision does not require proof that the presumed parent claims the child as his or her *biological* child. As noted, a presumed parent need not be a biological parent (*In re Jesusa V.*, *supra*, 32 Cal.4th 588, 607–608), and subdivision (d) of section 7611 does not require a presumed parent who is not a biological parent to pretend otherwise. (*In re Nicholas H.* (2002) 28 Cal.4th 56, 63 ["a man does not lose his status as a presumed father by admitting he is not the biological father"].) What is required, rather, is that the presumed parent *treat* the child as though the child was his or her own by developing a parental relationship and taking on " ' " 'parental responsibilities—emotional, financial, and otherwise.' " ' " (*In re Jovanni B.* (2013) 221 Cal.App.4th 1482, 1488.)

Michael relies in part on *In re Spencer W.* (1996) 48 Cal.App.4th 1647 (*Spencer W.*), but we find that case supportive of our conclusion. In *Spencer W.*, the man seeking presumed parent status, who knew he was not the child's biological parent, was present at the birth, lived with the mother at her home, and was financially supported by the mother after the child's birth. (*Id.* at p. 1650.) During this time, he cared for the child and claimed parentage to friends, neighbors, and relatives. When the mother was

incarcerated two years later, however, he left the child with a friend of the mother and, for the next several months, neither saw the child nor provided any financial support. (*Id.* at p. 1651.) Soon after, the father was incarcerated and, when he learned of the dependency proceedings, made no attempt to intervene for nearly a year. (*Id.* at pp. 1651–1652.) The court affirmed the juvenile court's denial of presumed parent status, concluding the man did not openly hold out the child as his own because, although he told others he was the child's father, he was "unwilling to proclaim paternity when there might have been some cost to him," such as reduced governmental payments or the burden of financial support. (*Id.* at p. 1654.) In other words, a verbal acknowledgment of paternity, whether true or false, is of little significance standing alone. A person who is not a biological parent does not satisfy the "openly holds out" requirement merely because he or she is willing to claim parentage. What ultimately matters to presumed parent status is a person's commitment to the child and the responsibilities of parenthood.[19]

In contrast to the claimant in *Spencer W.*, there is no evidence that Donald is acting out of convenience, without the underlying commitment to the minor expected of a parent. He is married to the minor's mother, treats the minor as his child, and claims an intent to continue to do so. While it is true, as Michael argues, that Donald never attempted to establish paternity in the family law proceedings filed by Michael and Joel, the juvenile court was not required to draw any particular inference from his failure. Since none of the parties were represented by counsel in that proceeding, it is unclear whether Donald understood his rights and options. Once he was provided counsel in the context of this proceeding, Donald promptly asserted his claim to paternity. Nor do we find it determinative that Donald, Mother, and the minor acknowledge Joel's biological

---

[19] In reaching this conclusion, we do not to mean to suggest that a presumed parent's words are necessarily irrelevant. If a potential presumed parent disclaims biological parentage under circumstances suggesting an intent to avoid the responsibilities of parenthood, that disclaimer would certainly be relevant to the "openly holds out" requirement. There is no evidence in the record that Donald's acknowledgment of Joel's biological parentage was intended in this manner.

21

paternity. That has not prevented the minor from referring to Donald as "Daddy." One can treat a person as a one's parent, and be treated as a child in return, while acknowledging a different biological reality.

Michael also contends Donald failed to satisfy the portion of section 7611, subdivision (d) requiring a presumed parent to "receive[] the child into his or her home" because Donald stated in his declaration he "moved in" with Mother and the minor in July 2013, from which Michael infers the family now lives in a home owned or rented by Mother. But there is no requirement that a presumed parent prove he or she rents or owns a residence in order to qualify as a presumed parent. One's "home" is the place where one resides. The evidence is clear that Donald has received the minor into his home, albeit a home that may be owned or rented by Mother.[20] Again, *Spencer W.* is instructive. In *Spencer W.*, the court concluded the man seeking presumed parent status was not merely living in the mother's home, but was also living *off* her, supported by her welfare payments. From this, the court found permissible the inference that the potential presumed parent was caring for the child out of convenience, rather than commitment. (*Spencer W., supra*, 48 Cal.App.4th at p. 1654.) There was no similar evidence submitted with respect to Donald's residence with Mother.

Finally, Michael contends Donald should be disqualified from presumed parent status because it was Donald's commission of domestic violence toward Mother in the minor's presence that resulted in the minor's detention. There is some support in decisional law for the argument. In *T.R., supra*, 132 Cal.App.4th 1202, the person seeking presumed parent status was the child's stepfather, who had raised the 10 year old

---

[20] The record is unclear about the financial arrangements of the couple. Donald owned or rented a home in 2011, but it is not known whether Mother and the minor moved into that home in July 2013, or whether, as the language of the declaration suggests, Donald moved into a residence they were already occupying. Further, and contrary to Donald's claim that he "provid[ed] food, shelter and clothes for the child for almost two years," there is no information in the declaration as to Donald's contribution to the family's finances. While evidence that Donald was helping to support the minor financially would have been useful in demonstrating his commitment, the absence of such evidence does not disqualify him.

in his home from the time she was three years old.  (*Id.* at pp. 1206, 1211.)  The child was detained on the basis of allegations, found true by the juvenile court, that the stepfather had molested her.  (*Id.* at pp. 1206–1207, 1211.)  In affirming the denial of presumed parent status, the court explained:  "[The stepfather's] conduct was antithetical to a parent's role and was a blatant violation of parental responsibilities.  It more than counterbalanced the factors favoring [the stepfather's] presumed father status. . . . If an individual can qualify for presumed father status based on his good deeds consistent with parental responsibilities, it follows that under certain circumstances he can be disqualified by repugnant conduct that is detrimental to the child."  (*Id.* at pp. 1211–1212.)  The *T.R.* court, however, expressly declined to "establish a bright-line test" that would automatically disqualify a person from presumed parent status if he or she had "committed sexual or serious physical abuse on a child leading to the institution of the dependency proceeding."  (*Id.* at p. 1210, fn. 5.)

While we do not mean to minimize the significance of Donald's abuse of Mother, we do not find it disqualified him as a matter of law from acquiring presumed parent status.  The violence, while committed in the minor's presence, was not directed at the minor.  As such, we do not find Donald's conduct so "antithetical to a parent's role" and such a "blatant violation of parental responsibilities" that it "counterbalanced the factors favoring" presumed parent status.  (*T.R., supra*, 132 Cal.App.4th at p. 1211.)  Like *T.R.*, we decline to adopt a rule that would disqualify a person from presumed parent status solely because their conduct led to the filing of the dependency proceeding.  Donald's violent conduct was, instead, one factor the juvenile court could consider in weighing Donald's request for presumed parent status.  We find no abuse of discretion in the juvenile court's conclusion that, under these circumstances, it was not determinative.

Michael urges us to follow *In re Kieshia E.* (1993) 6 Cal.4th 68, which held that "any adult who causes the onset of dependency proceedings by committing sexual or other serious physical abuse upon a child in his charge" is disqualified from acquiring de facto parent status in the proceeding.  (*Id.* at p. 78.)  *T.R.* distinguished *Kieshia*, noting the stepfather in *T.R.* sought presumed parent status, rather than de facto parent status.

23

(*T.R., supra*, 132 Cal.App.4th at p. 1210.) That is, of course, also true here. In addition, we note the person seeking de facto parent status in *Kieshia E.*, like the stepfather in *T.R.*, had sexually molested the child, a three-year-old girl. As discussed above, the violence committed by Donald was not directed against the minor, and we are therefore unwilling to find it disqualifying as a matter of law.

### 2. "Detriment" Under Section 7612

Michael maintains the juvenile court erred in finding the minor would suffer a detriment if Donald was not designated a presumed father, the finding necessary for the designation of more than one presumed parent under section 7612, subdivision (c).

As noted above, prior to 2013, the juvenile court was precluded from designating more than one presumed parent. If two persons qualified, the court was required to choose between them, based on "considerations of policy and logic." (§ 7612, subd. (b).) Now, more than one presumed parent can be designated if to do otherwise "would be detrimental to the child." (*Id.*, subd. (c).)

Section 7612, subdivision (c) was recently explored at length in *Donovan L.*, *supra*, 244 Cal.App.4th 1075, a dependency proceeding in which the detained child was fathered by another man in the course of a marriage. The husband raised the child as his own, apparently unaware he was not the biological father, and was eventually granted custody in the course of several dependency proceedings arising out of the mother's substance abuse. Early in the child's life, the mother had allowed the child to visit with his biological father, and at the dispositional hearing of the final dependency proceeding the biological father appeared and asked to be designated a presumed parent. (*Id.* at pp. 1079–1080.) The juvenile court declared both the husband and the biological father to be presumed parents. Although the court found the husband to be a good father and the biological father to lack a current relationship with the child, it reasoned the child would suffer a detriment if he was not allowed to develop a relationship with his biological father. (*Id.* at pp. 1081–1082.)

In reversing the juvenile court's order under section 7612, subdivision (c), the court discussed the legislative history of the amendment at length. "Detriment" was

24

selected as a standard for permitting more than one presumed parent after the Governor vetoed a bill that would have made the decision dependent on the " 'best interest of the child.' " (*Donovan L.*, *supra*, 244 Cal.App.4th at p. 1089, fn. 12.)  The standard was borrowed from section 3041, which governs the award of custody to a nonparent over the objection of a parent.  Under that section, detriment is found if the nonparent has achieved a successful, established relationship with the child.  (*Donovan L.*, at p. 1089.) Legislative reports prepared in connection with the amendment to section 7612 emphasized the provision for more than one presumed parent was intended to prevent the disruption of established emotional bonds between a child and his or her caretakers. (*Donovan L.*, at pp. 1089–1090.)  To that end, an uncodified portion of the amendment states, " 'in rare cases, children have more than two people who are that child's parent in every way. . . . [¶] . . . [¶] . . . It is the intent of the Legislature that this bill will only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents.' " (*Id.* at p. 1090, italics omitted.)  Based on this reasoning, the *Donovan L.* court concluded, " 'an appropriate action' for application of section 7612, subdivision (c) requires a court to find an existing, rather than potential, relationship between a putative third parent and the child, such that 'recognizing only two parents would be detrimental to the child.' " (*Id.* at p. 1092.) Because the juvenile court concluded the biological father did not have a strong relationship with the child, *Donovan L.* reversed the finding of detriment from failing to recognize the biological father as a presumed parent.  (*Id.* at pp. 1092–1093.)  A contrary conclusion, the court reasoned, "would open the floodgates to virtually all biological fathers" and "call into question the continued viability of section 7612, subdivision (b)," which requires the juvenile court to select between or among multiple presumed parents on the basis of policy and logic.  (*Id.* at p. 1093.)

Given this interpretation of the detriment requirement, there was substantial evidence to support the juvenile court's conclusion it would be detrimental not to designate Donald as a presumed parent.  As discussed above, the minor has an

established, parental relationship with Donald. Preserving such a relationship is precisely the purpose of the amendment to section 7612 to permit multiple presumed parents.

Michael argues Donald's domestic violence supports a finding that it would not be detrimental to deny Donald presumed parent status. While the juvenile court might permissibly have reached that conclusion, we find no abuse of discretion in the court's decision to favor preservation of the minor's strongest parental relationship, notwithstanding his domestic violence. Michael also challenges the strength of the minor's bond with Donald, pointing out they had lived together for only 20 months. Twenty months, however, is a significant portion of the minor's young life. In any event, the juvenile court's contrary conclusion is supported by substantial evidence, for the reasons discussed in connection with Donald's designation as a presumed parent.

Finally, Michael contends that finding Donald to be a presumed parent "circumvents the purpose of stepparent adoption statutes." Being declared a presumed parent, he argues, permits Donald to "achieve a potentially custodial status" with the minor without going through the process established by section 9000 et seq. for the adoption of a child by his or her stepparent. In effect, Michael argues, if a stepparent is to be designated a presumed parent, that person should be required to adopt the child; conversely, if a stepparent has not seen fit to adopt, presumed parent status should be denied. In considering this argument, it must be remembered that adoption and presumed parent status serve different purposes. Adoption is available generally to stepparents, while designation of a presumed parent normally occurs in the context of a dependency proceeding. Given the potentially critical importance of a presumed parent in the life of a child who is subject to a dependency proceeding, we see no reason to place roadblocks to the achievement of that status by otherwise qualified persons, including stepparents, by imposing requirements not found in the Family Code provisions bearing on presumed parent status. In the absence of an indication by the Legislature that adoption is intended

26

to be the exclusive means by which a stepparent is to be granted custodial status, we find no basis for denying presumed parent status to otherwise qualified stepparents.[21]

## D. *Denial of Visitation to Michael*

In both appeals, Michael raises a variety of challenges to the juvenile court's refusal to grant him visitation with the minor. When a presumed parent has been designated in a dependency proceeding, however, other persons are generally not entitled to an order granting visitation with the child. (*In re Elijah V.* (2005) 127 Cal.App.4th 576, 589; *In re O. S.* (2002) 102 Cal.App.4th 1402, 1410 [alleged fathers not entitled to visitation].) Because we have vacated the order finding Michael to be a presumed parent, he no longer satisfies the prerequisite to an order of visitation—presumed parent status. The validity of the juvenile court's ruling denying him visitation is therefore a moot issue. Even if we concluded the juvenile court erred in its refusal to grant visitation, we would not be able to direct entry, or even reconsideration, of the order of visitation he seeks because he no longer qualifies for such an order. (*In re Z.F.* (2016) 248 Cal.App.4th 68, 72 [appeal must be dismissed as moot when no effective relief can be granted].) If Michael gains presumed parent status on remand, he may renew his request for visitation in the juvenile court.[22]

While we must dismiss as moot Michael's challenges to the denial of visitation, for purposes of guiding the juvenile court on remand we note the court's rationale for denying visitation was erroneous. (E.g., *Costco Wholesale Corp. v. Superior* Court

---

[21] Michael also argues, on the basis of references in legislative history documents, that the amendment permitting more than one presumed parent was not intended to apply to stepparents. We decline to infer such an important exception from comments in the legislative history that are not reflected in the text of the legislation. In any event, those references merely indicated the authors' belief that stepparents would rarely qualify for presumed parent status. They do not indicate an intent to bar otherwise qualifying stepparents.

[22] Michael also challenges in various ways the juvenile court's failure to implement the family court's order of visitation. As discussed above, that order is void because the family court had no jurisdiction over the issue of visitation when it rendered the ruling. (*A.H. v. Superior Court, supra*, 219 Cal.App.4th 1379, 1388–1389.)

27

(2009) 47 Cal.4th 725, 733 ["An abuse of discretion is shown when the trial court applies the wrong legal standard."].)  As we understand the juvenile court's reasoning, it found visitation by the minor with Michael would be detrimental because the Agency offered the opinion of an expert witness to that effect and Michael failed to offer expert testimony to refute the conclusion, leaving the claim of detriment undisputed.  Further, the juvenile court's statement that the expert opinion was "the only evidence I have in regards to the reason for the Agency's not going forward with visitation for [Michael]" suggests the court viewed its role as reviewing the Agency's recommendation, rather than making an independent finding of detriment.

There is no evidentiary rule that an expert opinion can be refuted only by another expert opinion.  (See, e.g., *People v. Taylor* (1935) 4 Cal.2d 495, 497 [expert opinion not conclusive, even if uncontradicted]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632 [expert testimony, like any other evidence, may be rejected even if uncontradicted].)  In fact, there was a great deal of evidence to refute the psychologist's conclusion, including evidence Michael maintained an apparently successful parental relationship with the minor during his first year and had successful visits with the minor during the early stages of the paternity action.  Further, there was evidence calling into question the validity of the psychologist's opinion, which was based on a relatively brief conversation with the social workers rather than any examination of the relevant documents, let alone interviews with the minor or other affected parties.  In addition, because one of the social workers had misunderstood the family court's order to include a finding of detriment—precisely the opposite of the family court's finding of no detriment—there was reason to doubt the accuracy of the information conveyed to the psychologist by the Agency, and Michael had no opportunity to cross-examine the psychologist about the foundation for her opinion because she did not testify.  It was therefore improper for the juvenile court to defer to the psychologist's conclusion on the ground that no contrary evidence on the issue of detriment was offered.  Further, "detriment" is a factual issue for determination by the juvenile court, not the Agency.  While the court could, of course, have found the expert's opinion persuasive, it was

required to perform its own evaluation of the evidence before settling on that conclusion, rather than deferring to the Agency's recommendation. For these reasons, we vacate the juvenile court's finding of detriment to the minor from visitation with Michael and direct that, should Michael reestablish presumed parent status, the juvenile court conduct a hearing de novo on visitation.

## III. DISPOSITION

The juvenile court's orders finding Michael to be a presumed parent and denying him visitation are vacated. The orders finding Joel and Donald to be presumed parents are affirmed. Following remand, the juvenile court is directed to hear and render a decision on Michael's request for presumed parent status. If Michael is designated a presumed parent, the juvenile court shall also reconsider his request for visitation.

                                       _____

                                       Margulies, J.

We concur:


_____

Humes, P.J.


_____

Dondero, J.


A146040, A146595
*In re Alexander P.*

30

Trial Court:   San Francisco County Superior Court

Trial Judge:   Hon. Nancy L. Davis
                        Hon. Newton J. Lam

Counsel:

Carol A. Koenig, under appointment by the Court of Appeal, for Appellant Michael P.

Ross Walker, under appointment by the Court of Appeal, for Defendant and Appellant Heidi S.

Marin Williamson, under appointment by the Court of Appeal, for Appellant Alexander P.

Linda Rehm, under appointment by the Court of Appeal, for Appellant Joel D.

Konrad S. Lee, under appointment by the Court of Appeal, for Respondent Donald Q.

Dennis J. Herrera, City Attorney, and Kimiko Burton, Lead Attorney; Gordon-Creed, Kelley Holl and Sugerman and Jeremy Sugerman, for Plaintiff and Respondent San Francisco Human Services Agency.