Filed 4/13/22  In re A.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.M. et al., Persons Coming Under the Juvenile Court Law. | B308966 (Los Angeles County Super. Ct. No. 18CCJP07933) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>G.R.,<br><br>      Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Caitlin Christian, under appointment by the Court of Appeal, for Minors and Respondents, A.M. and F.M.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

—————————————

The Los Angeles County Department of Children and Family Services (DCFS) initiated juvenile dependency proceedings concerning A.M., F.M., Vi.M., M.M., and Va.M. on the grounds that their mother (mother) and the biological father of A.M. and F.M. (G.R.) had physically abused A.M. and F.M.  At the outset of the proceedings, the juvenile court declared that A.M. had two presumed fathers—(1) G.R. and (2) A.S., who is the biological father of Vi.M., M.M., and Va.M.  The court also found that A.S. is the sole presumed father of F.M., Vi.M., M.M., and Va.M.  The court later sustained an amended version of the initial petition, which included an allegation that A.S. had exposed F.M. to A.S.'s domestic violence against mother.  The juvenile court declared all five children dependents of the court, removed them from their parents, and ordered DCFS to provide family reunification services.

DCFS filed a subsequent petition alleging dependency jurisdiction over the five children under Welfare & Institutions Code[1] section 300, subdivisions (b)(1), (d), and (j) because G.R. sexually abused A.M. and mother failed to protect A.M. from

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

G.R.'s misconduct. At the adjudication hearing, the juvenile court sustained the petition and invited the parties to address at the upcoming disposition hearing whether it should set aside G.R.'s designation as presumed father of A.M. in light of its finding that G.R. had sexually abused A.M. Upon A.M.'s request, the court thereafter declared that G.R. was merely A.M.'s biological father and A.S. was A.M.'s sole presumed father. The juvenile court then issued custody and parentage orders that gave sole physical custody of the five children to A.S. and monitored visitation to mother, and terminated dependency jurisdiction.

On appeal, G.R. claims the juvenile court erred in sustaining the subsequent petition and setting aside his designation as a presumed father of A.M.[2] We reject G.R.'s challenge to the court's jurisdictional findings because most of his arguments would have us reweigh the evidence presented to the juvenile court, and the remainder of his contentions does not establish that A.M.'s allegations of abuse are physically impossible or inherently incredible. Further, he fails to show the court abused its discretion in reconsidering its prior parentage ruling and concluding that it was in A.M.'s best interest to designate A.S. as her sole presumed father. Finding no error, we affirm.

---

[2] Mother and A.S. are not parties to this appeal. Appellate counsel for A.M. and F.M. filed a respondents' brief.

3

## PROCEDURAL BACKGROUND[3]

We summarize only those aspects of the procedural history that are relevant to this appeal.

On December 13, 2018, DCFS filed a juvenile dependency petition pursuant to section 300 concerning A.M., F.M., Vi.M., M.M., and Va.M.[4] (*A.M. I*, *supra*, B299164.) In essence, the petition alleged: (1) G.R. had physically abused A.M. and F.M. and mother failed to protect them, and (2) mother had physically abused A.M. and F.M. and G.R. failed to protect them. (*Ibid.*) At the December 14, 2018 detention hearing, the juvenile court declared G.R. the presumed father of A.M. and F.M., and A.S. the presumed father of Vi.M., M.M., and Va.M. (*Ibid.*) The court ordered DCFS to detain the five children pending disposition or a further order of the court. (*Ibid.*)

At a hearing held on February 4, 2019, the juvenile court declared A.S. to be a presumed father of A.M. and F.M. (*A.M. I*,

---

[3] We derive part of the Procedural Background from our prior opinion (*In re A.M.* (Mar. 4, 2020, B299164) [nonpub. opn.] (*A.M. I*)), which we judicially notice on our own motion. (Evid. Code, §§ 452, subd. (d), 459.) We derive other aspects of the Procedural Background from concessions in G.R.'s appellate briefing. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party. [Citations.]' [Citations.]"].)

[4] When DCFS filed this petition, A.M. was 10 years old, F.M. was eight, Vi.M. was six, M.M. was five, and Va.M. was four. (*A.M. I*, *supra*, B299164.) Additionally, we note that G.R. is the biological father of A.M. and F.M., whereas A.S. is the biological father of Vi.M., M.M., and Va.M. (*Ibid.*)

4

*supra*, B299164.)  At a February 8, 2019 hearing, the court declared that G.R. was not F.M.'s presumed father, thereby negating its prior ruling affording him that status.  (*Ibid.*)  The court nonetheless reaffirmed its prior ruling declaring G.R. to be a presumed father of A.M.  (*Ibid.*)  Thus, pursuant to the court's rulings, A.M.'s presumed fathers were A.S. and G.R., and A.S. remained the sole presumed father of F.M., Vi.M., M.M., and Va.M.  (*Ibid.*)

On April 4, 2019, DCFS filed a first amended petition, which reasserted the initial petition's counts against mother and G.R., and added two identical counts (count b-5 and count c-1) that alleged A.S. struck mother in F.M.'s presence.  (*A.M. I*, *supra*, B299164.)  At the June 10, 2019 adjudication hearing, the juvenile court found that amended versions of the 12 counts alleged against G.R. and mother were true, dismissed count c-1, and sustained an amended version of count b-5.  (See *ibid.*)  On June 26, 2019, the court declared each of the children dependents of the court, removed them from the care, custody, and control of their mother and respective fathers, and ordered DCFS to provide family reunification services to mother, G.R., and A.S.  (*Ibid.*)  Mother's case plan permitted her to have monitored visits with all five children, and G.R.'s case plan authorized monitored visits with A.M. and F.M.  We later affirmed the jurisdictional and dispositional orders against A.S. in *A.M. I*.  (*Ibid.*)

On January 6, 2020, the juvenile court held a review hearing at which it found G.R. and mother had made substantial progress on their case plans, but also found that returning A.M. and F.M. to G.R.'s and mother's physical custody would create a substantial risk of detriment to these children.  The court ordered DCFS to continue to provide reunification services to G.R. and

5

mother, and allowed them to have unmonitored visits with A.M. and F.M.

On March 2, 2020, DCFS filed a subsequent petition pursuant to section 342.[5] The subsequent petition invoked the juvenile court's jurisdiction under section 300, subdivisions (b)(1), (d), and (j), and alleged three identical counts:  count b-1, count d-1, and count j-1.  These counts averred:  "On a prior occasion, the children['s] . . . mother['s] . . . male companion, [G.R.], father of the children, [A.M.] and [F.M.], sexually abused . . . [A.M.] by fondling [A.M.'s] vagina with [G.R.'s] hand.  On a prior occasion, [G.R.] fondled [A.M.'s] legs and the area above the child's vagina and below the child's belly button with [G.R.'s] hands.  On prior occasions, [G.R.] hugged [A.M.], while [G.R.] fondled the child's back underneath the child's clothes and on top of the child's clothes, causing [A.M.] to feel uncomfortable.  On prior occasions, [G.R.] fondled . . . [A.M.'s] hands, legs and knees with [G.R.'s] hands, causing [A.M.] to feel uncomfortable.  The mother failed to take action to protect [A.M.] and the mother does not believe the child's sexual abuse disclosure.  Such sexual abuse of [A.M.] on [the] part of [G.R.] and the mother's failure to protect the child endangers the child's physical health and safety, and places

---

[5] Section 342, subdivision (a) provides in pertinent part: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition."  (§ 342, subd. (a).)  Subdivision (b) states:  "Unless otherwise provided by law, all procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."  (*Id.*, subd. (b).)

[A.M.] and siblings, [F.M., Vi.M., M.M., and Va.M.] at risk of serious physical harm, damage, danger, sexual abuse and failure to protect."

On March 3, 2020, the juvenile court detained all five children, and authorized G.R. and mother to have only monitored visits with A.M. and F.M.

On August 17, 2020, the juvenile court held an adjudication hearing on the subsequent petition. The court admitted into evidence six reports from DCFS, five of which have attachments that were also admitted into evidence.[6] G.R. called A.M. as a witness. The court later found A.M. to be "highly credible as a witness" and sustained counts b-1, d-1, and j-1 of the subsequent petition. The court also stated that at the upcoming disposition hearing, the parties could address whether G.R. should retain his designation as a presumed father of A.M. Specifically, the court remarked, "Now that the [subsequent

---

[6] The last minute information report filed on August 5, 2020 and its attachments (collectively, DCFS's exhibit 6) do not appear in the clerk's transcript. On June 7, 2021, G.R. filed a "request to complete the record" in which he asks us to consider a copy of that last minute information report and the forensic interview transcript attached thereto. (Boldface & capitalization omitted.) We construe G.R.'s request as a motion to augment the record to include these documents, and, so construed, we grant that motion, which we also note is unopposed. (See Cal. Rules of Court, rule 8.410(b)(1) ["On motion of a party or on its own motion, the reviewing court may order the record augmented or corrected as provided in rule 8.155(a) . . . ."]; Cal. Rules of Court, rule 8.155(a)(1)(A) ["At any time, on motion of a party or its own motion, the reviewing court may order the record augmented to include: [¶] . . . Any document filed or lodged in the case in superior court . . . ."].)

7

petition] has been sustained, [the court] believe[d] there's some support in the case law for making a determination under Family Code [section] 7612 that stronger considerations of policy would support [A.S.'s] claim to presumed father status, and [A.S. and G.R.] should not continue to both have presumed father status."

On September 18, 2020, A.M. filed a motion requesting the court to set aside its prior ruling that G.R. is a presumed father of A.M. In particular, A.M. argued that "[i]n light of the sustained allegation of sexual abuse by [G.R.], the Court should find that [A.S.] has the stronger claim to presumed father status[,] . . . and . . . that [G.R.] is merely a biological father."

At the disposition hearing also held on September 18, 2020, the juvenile court set aside G.R.'s designation as a presumed father of A.M., declared A.S. to be A.M.'s sole presumed father, and found G.R. was only A.M.'s biological father. The court ruled G.R. "shall have no visits" with A.M. and F.M. It also found that "those conditions which would justify the initial assumption of jurisdiction under . . . section 300 no longer exist and are not likely to exist if supervision is withdrawn and the court terminates jurisdiction with a juvenile custody order awarding parents joint legal custody,[7] and [A.S.] sole physical custody[, with] mother . . . hav[ing] monitored visits a minimum of nine hours per week." (Capitalization omitted.)

On September 23, 2020, the juvenile court issued custody and parentage orders that are consistent with its September 18, 2020 rulings, and terminated its jurisdiction over

---

7 Although the juvenile court's minute orders for the hearing stated that the "[p]arents" would be awarded joint legal custody, the court's oral ruling clarified the court intended to award joint legal custody to only A.S. and mother.

the case.  G.R. timely appealed the jurisdictional and dispositional orders arising from the subsequent petition.

## DISCUSSION

### A.    G.R. Fails to Show that the Juvenile Court Lacked Jurisdiction Under Section 300, Subdivision (d)

As we noted in the Procedural Background, all three counts in the subsequent petition alleged G.R. fondled A.M.'s vagina with his hand on one occasion, G.R. fondled her legs and "the area above the child's vagina and below the child's belly button" on another occasion, and at certain points in time, G.R. "fondled" A.M.'s back underneath and on top of her clothes while hugging her, and "fondled . . . [her] hands, legs and knees with [his] hands, causing the child . . . to feel uncomfortable."  In sustaining the petition, the juvenile court found this conduct gave rise to jurisdiction under section 300, subdivisions (b)(1), (d), and (j).

G.R. argues "DCFS failed to carry its burden [of showing] that [he] sexually abused A.M. under either of the subdivisions [of section 300] pled—(b) or (d), and therefore derivatively, (j)." For the reasons discussed below, we conclude the juvenile court did not err in asserting jurisdiction under section 300, subdivision (d).  We do not separately assess whether jurisdiction over A.M.'s siblings was proper under subdivision (j) because G.R.'s challenge based on that subdivision is predicated on his attack on the court's assertion of jurisdiction under subdivision (d).  (See § 300, subd. (j) [providing that abuse or neglect of a child's sibling as defined under (inter alia) subds. (b) *or* (d) can give rise to dependency jurisdiction]; *In re J.F.* (2019) 39 Cal.App.5th 70, 79 (*J.F.*) ["The juvenile court's orders are 'presumed to be correct, and it is appellant's burden to

9

affirmatively show error.' [Citations.] . . . ' "When an appellant fails to raise a point, . . . we treat the point as waived." ' [Citation.]"].) Furthermore, we decline to address whether the evidence of G.R.'s sexual abuse of A.M. would also give rise to jurisdiction under subdivision (b)(1). (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 308 [" '[T]he minor is a dependent if the actions of either parent bring [the minor] within *one* of the statutory definitions of a dependent. [Citations.]' [Citation.] 'For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings . . . .' [Citation,]" italics added].)

Section 300, subdivision (d) provides for dependency jurisdiction if "[t]he child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by the child's parent or guardian or a member of the child's household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." (§ 300, subd. (d).)

Penal Code section 11165.1, subdivision (b)(4) defines sexual abuse to include: "The intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of a child, or of the perpetrator by a child, for purposes of sexual arousal or gratification, except that it does not include acts which may reasonably be construed to be normal caretaker responsibilities; interactions with, or demonstrations of affection for, the child; or acts performed for a valid medical purpose." (Pen. Code, § 11165, subd. (b)(4).)

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings [of the juvenile court,] . . . we determine if substantial evidence, contradicted or uncontradicted, supports them.  "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court."  [Citation.]  "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the [juvenile] court. [Citations.]" ' "  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).) Appellant "has the burden of showing the jurisdictional finding[s are] unsupported by substantial evidence."  (See *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 598 (*Giovanni F.*).)

At bottom, G.R. raises the following challenges to the juvenile court's assertion of jurisdiction under section 300, subdivision (d):  (1) A.M.'s foster caregiver did not observe G.R. engage in "any sexually inappropriate behavior" during his visits with A.M.; (2) A.M. admitted that during her visits with G.R., she " 'kn[ew] he[ was] trying to be affectionate but . . . d[idn't] like it"; (3) there were inconsistencies between, and within, what G.R. describes as vague accounts of sexual abuse A.M. had relayed to the police, A.M.'s therapist, DCFS, the forensic interviewer, and the court, and A.M. had told DCFS on two occasions G.R. had not sexually abused her; (4) A.M.'s description of an incident occurring in a shower negates a finding of sexual intent or is "physiological[ly] impossib[le]"; (5) the version of a bathroom incident A.M. described during the forensic interview "was physically improbable"; and (6) record evidence shows that A.M.

11

fabricated allegations of sexual abuse at the behest of her maternal grandmother (MGM) so that A.M. would not reunify with G.R. Under our deferential substantial evidence standard, none of these contentions demonstrates error.[8]

First, G.R.'s arguments regarding his visits with A.M. (i.e., items (1) and (2) above) are, in effect, a claim that the following

---

[8] G.R. further argues that the juvenile court "misapplied the law when it declared the conduct [A.M.] described was neither rape nor sexual assault but could nonetheless qualify as sexual abuse because he touched her thighs and buttocks," given that "[t]he record does not show A.M. claimed [G.R.] touched her buttocks or thighs."

This is not a fair interpretation of the juvenile court's statement. In the course of observing that DCFS had alleged conduct described in Penal Code section 11165.1, subdivision (b)(4), the court stated, "If you touch the inner thighs or buttocks of a 10- or 11-year-old child, it may not be sexual assault, but it is clearly inappropriate and would be highly distressing to a child, and there is just no reason to do that other than sexual gratification." Thus, the context of this passage indicates the court was merely identifying examples of conduct that fall within the scope of this provision, which includes "[t]he intentional touching of the . . . genital area, groin, inner thighs, and buttocks . . . ." (See Pen. Code, § 11165.1, subd. (b)(4)).

Additionally, G.R. does not offer any analysis or citation to the record to support his assertion in his appellate brief that "[t]he record does not show A.M. claimed [he] touched her . . . thighs." (Recall that the juvenile court found G.R. had touched A.M.'s legs.) Accordingly, G.R. has waived this challenge. (See *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*) [" '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]"].)

allegations from count d-1 do not amount to sexual abuse: "On prior occasions, [G.R.] hugged [A.M.], while [he] fondled the child's back underneath the child's clothes and on top of the child's clothes," and he "fondled [A.M.'s] hands, legs and knees with [his] hands, causing the child to feel uncomfortable." We need not address G.R.'s challenges to this portion of count d-1 because the other conduct A.M. reported was sufficient to give rise to jurisdiction under section 300, subdivision (d).

Next, G.R. contends there are discrepancies between and within A.M.'s allegations of sexual abuse, A.M.'s allegations are too vague, and she initially told the agency that G.R. did not sexually abuse her (item (3) above). For instance, G.R. claims A.M. told the police that G.R. touched her above her vagina and under her navel when she was in the shower but she later stated during the forensic interview that G.R. " '*almost* touched her lower stomach' " during that encounter.[9] (Italics added.) Another example is G.R.'s assertion that "A.M.'s memory was selective" during her forensic interview because she could not

---

[9] Although DCFS asserts A.M. described "the shower incident" during her forensic interview, G.R. claims A.M. alleged two separate shower incidents in the interview, which he calls "Shower incident #1" and "Shower incident #2." In so doing, G.R. simply labels quotations from various transcript excerpts as descriptions of "Shower incident #1" and "Shower incident #2," but fails to explain why he believes A.M. was describing two different events. Accordingly, we need not address this issue further. (See *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 ["We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' [Citation.]"].)

13

remember the name of the sister who was in the shower with her. Yet another instance is G.R.'s claim that although A.M. reported to DCFS that he touched the outside of her underwear during the bathroom incident, A.M. testified at the adjudication hearing that he touched "her *under her underwear*" on that occasion.

In essence, G.R. is arguing that these and other purported differences and the lack of clarity in A.M.'s statements establish the juvenile court erred in finding A.M. was a "highly credible" witness and "the things she described were to the best of her recollection things that actually happened."[10]  G.R. misconceives our standard of review.  We may reject "the statements of a witness who has been believed by the trier of fact" only if "it [is] physically impossible for the statements to be true, or their falsity [is] apparent *without resorting to inferences or deductions*. [Citation.]"  (See *In re Jordan R.* (2012) 205 Cal.App.4th 111, 136 (*Jordan R.*), italics added, citing *People v. Friend* (2009) 47 Cal.4th 1, 41 (*Friend*).)  With regard to the alleged defects encompassed in item (3) above, G.R. has not satisfied this burden.

As previously noted in item (4) above, G.R. claims statements A.M. made during the forensic interview establish nothing more than that he " '[a]lmost touch[ed]' [her] tummy while turning off the shower . . . ."  Although A.M. did make statements that one could interpret to suggest that G.R. "almost touched [her] stomach" when he was "[t]rying to turn off the water," she later stated that during this incident, "he was

---

**10**  For example, G.R. argues A.M's "allegations were vague, contradictory, and ultimately unsupported by the evidence," and that she "was not credible when describing the . . . claims of inappropriate touching."

*petting* . . . the lower part of [her] stomach." (Italics added.) The juvenile court could have credited this second statement, which contravenes G.R.'s assertion that he unintentionally touched A.M. while he was turning off the shower faucet.

In addition, a police report DCFS submitted to the court indicates A.M. stated G.R. had "touched her in between her legs with his hands . . . . right above her vagina and below her belly button" while she was in the shower. The juvenile court could have reasonably inferred A.M.'s statement from the police report provided further clarity regarding which part of the body G.R. had touched in the shower. Regardless of whether this part of her body falls within Penal Code section 11165.1, subdivision (b)(4)'s definition of "intimate parts," its proximity to A.M.'s vagina, coupled with the evidence discussed below that G.R. touched A.M.'s vagina or the clothing covering it on another occasion, supports a finding of a substantial risk that G.R. would sexually abuse her. (See § 300, subd. (d) [providing that a "substantial risk" of sexual abuse gives rise to jurisdiction].) Further, we reject G.R.'s assertion that it was "physiological[ly] impossib[le]" for G.R. to touch A.M. in the area she described because G.R. does not support it with any record evidence or judicially noticeable fact.[11] (See *Hernandez*, *supra*,

---

[11] Even if basic principles of female anatomy were the proper subject of judicial notice (see Evid. Code, § 452, subd. (g) [authorizing judicial notice of "[f]acts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute"]), we would still reject G.R.'s claim of impossibility because the female body has an area that is between the legs, below the navel, and above the vagina—i.e., the pubic region.

37 Cal.App.5th at p. 277.)  Insofar as G.R. claims A.M. identified a contact area that cannot be characterized as her lower stomach, the juvenile court was entitled to infer that any such discrepancy was attributable to the child's incomplete knowledge of female anatomy.

As also previously noted in item (5) above, G.R. contends that the account of the bathroom incident A.M. provided during her forensic interview is "physically improbable."  G.R. points out A.M. stated during this interview that G.R. entered the bathroom while she was sitting down using the toilet, and that he then touched her private part while her underwear was on, but she slipped and he ultimately touched her private part under the underwear.  G.R. challenges the plausibility of this account, arguing that "most people do not use the toilet with their underwear on" and "general female physiology presents that it would be quite a challenge for a person to casually insert one's hand to reach the vagina while the other person was sitting on the toilet."[12]

---

[12] At the August 17, 2020 adjudication hearing, G.R.'s counsel asked A.M., "Can you tell me what you did right after [G.R.] left the bathroom?"  A.M. responded, "Right after he left, I started like to hurt—I tried to tell my mom, but she was sleeping, and I tried to tell her and then she told me that she will tell him in the morning to stop and yeah."  This testimony is arguably ambiguous, given that it does not clarify whether A.M. felt any physical pain as a result of G.R.'s physical contact with her vagina, or whether A.M. instead endured some sort of emotional "hurt."  To add to the ambiguity, the jurisdiction/disposition report recites A.M. told the agency that " 'it didn't hurt' " when G.R. touched her in the bathroom.

16

G.R. overlooks the fact DCFS reported that when it interviewed A.M. on February 7, 2020, A.M. stated "[s]he got up quickly and lifted her underwear" after G.R. entered the bathroom but before he "touched her vagina over her underwear." Under the substantial evidence standard, we must assume the juvenile court read the accounts of the bathroom incident from the forensic interview and the police report in pari materia. Furthermore, the court was entitled to infer from this evidence that G.R. perpetrated "sexual abuse" under Penal Code section 11165.1, subdivision (b)(4) by touching A.M.'s genital area and/or the clothing covering it for the purposes of sexual arousal or gratification. (See *In re R.C.* (2011) 196 Cal.App.4th 741, 750 [" 'A touching which might appear sexual in context because of . . . the nature of the touching[ ] or the absence of an innocent explanation[ ] is more likely to produce a finding that the act was indeed committed for a sexual purpose . . . .' [Citation.]"].)

Lastly, concerning item (6) above, G.R. argues the conditions surrounding A.M.'s reports of sexual abuse indicate MGM coached A.M. to fabricate these allegations so that A.M. would not be reunited with G.R. As illustrative, G.R. claims "MGM acknowledged she did not get along with [mother], largely due to [m]other's relationship with [G.R.,] and the record amply evidences MGM's ongoing attempt to bias DCFS against [G.R.] and [m]other." Another example is G.R.'s claim that the day before A.M.'s interview with the police, she and her siblings had an unmonitored visit with A.S. and MGM, and "[t]he more serious allegations A.M. made against [G.R.] surfaced after she and MGM spoke about the matter." An additional example is G.R.'s contention that A.M. "denied any sexual abuse or inappropriate touching" "[w]hen the dependency [case] first

began in 2018," and that A.M.'s allegations of sexual abuse "started surfacing" only "[o]nce reunification loomed on the horizon . . . ." These arguments attacking A.M.'s credibility again misconceive our standard of review and G.R.'s burden on appeal to demonstrate error. We thus reject the arguments falling within the scope of item (6) above.

In sum, G.R. attacks the juvenile court's jurisdictional findings of sexual abuse by advocating on appeal inferences and credibility findings that are within the province of that court. This kind of challenge is insufficient to discharge his "burden of showing the jurisdictional finding[s are] unsupported by substantial evidence." (See *Giovanni F.*, *supra*, 184 Cal.App.4th at p. 598; see also *Friend*, *supra*, 47 Cal.4th at pp. 40–41 [rejecting an appellate challenge to a witness's testimony because "[t]he impeachment arguments that defendant repeat[ed] . . . involve[d] simple conflicts in the evidence" (e.g., the trial testimony "differed in some details from [the witness's] previous statements") that did not establish the witness's "testimony was inherently incredible"]; *Jordan R.*, *supra*, 205 Cal.App.4th at p. 136 ["To the extent the trial court's findings rest on an evaluation of credibility, the findings should be regarded as *conclusive* on appeal."]; *I.J.*, *supra*, 56 Cal.4th at p. 773 [" ' "[W]e draw all reasonable inferences from the evidence to support the findings . . . ." [Citation.]' "].) Accordingly, we affirm the juvenile court's order sustaining the subsequent petition.

## B. G.R. Does Not Demonstrate the Juvenile Court Erred in Setting Aside Its Prior Ruling Declaring Him a Presumed Father of A.M.

At the September 18, 2020 disposition hearing, the juvenile court set aside its prior order designating G.R. as a presumed

18

father of A.M., reasoning that, "under Family Code [section] 7612, [A.S.] has the stronger claim to presumed father status." Family Code section 7612, subdivision (b) provides in pertinent part: "If two or more presumptions arise under Section 7611 that conflict with each other, . . . the presumption that on the facts is founded on the weightier considerations of policy and logic controls." (Fam. Code, § 7612, subd. (b).) Although this provision ordinarily precludes a court from designating more than one presumed father of a child, subdivision (c) of that statute states that, "[i]n an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child." (See *id.*, subd. (c); see also *In re Alexander P.* (2016) 4 Cal.App.5th 475, 496–498 (*Alexander P.*) [noting that although Fam. Code, § 7612, subd. (b) "preclude[s]" a court "from designating more than one presumed parent," subd. (c) allows a child to have more than one presumed parent in certain " 'rare cases' "].)

G.R. argues the "court's ruling . . . stripping [him] of his presumed father status" vis-à-vis A.M. "presents an unusual legal issue:  Can a parent lose his presumed father status, a judgment long final and never challenged, if he thereafter is found to commit acts subjecting the child to jurisdiction under section 300?" G.R. claims that the answer to that question is no. For the reasons stated below, we disagree with such an absolute proposition.

Section 385 confers upon a juvenile court "the statutory authority . . . to change, modify, or set aside '[a]ny order made by the court in the case of any person subject to its jurisdiction'

19

sua sponte," and we review a court's exercise of that authority for abuse of discretion. (See *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 98, 111, 116, 118–119 (*Nickolas F.*), quoting § 385.)[13] Likewise, the juvenile court's application of Family Code section 7612 to resolve the competing claims of several presumed fathers is reviewed for abuse of discretion.[14]

---

[13] G.R. concedes the juvenile court reconsidered its prior order declaring him to be a presumed father of A.M. sua sponte. Additionally, G.R. does not argue the court failed to provide him with the "notice and . . . opportunity to be heard" that must precede the sua sponte reconsideration of a prior order. (See *Nickolas F.*, *supra*, 144 Cal.App.4th at p. 98; see also *J.F.*, *supra*, 39 Cal.App.5th at p. 79 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]"].) Notwithstanding G.R.'s suggestion to the contrary, res judicata and collateral estoppel did not bar the juvenile court from setting aside its prior paternity finding sua sponte. (See *In re J.P.* (2020) 55 Cal.App.5th 229, 232, 239, 241–243 [holding that res judicata and collateral estoppel do not preclude a juvenile court from sua sponte reconsidering a previous paternity determination made in an ongoing dependency case].)

[14] Although the substantial evidence standard of review applies to a juvenile court's ruling on whether a man satisfies the statutory requirements for presumed father status (see *In re L.L.* (2017) 13 Cal.App.5th 1302, 1310, 1313 (*L.L.*)), the abuse of discretion standard governs (i) the court's resolution of the competing claims of multiple presumed fathers under Family Code section 7612, subdivision (b); and (ii) its decision regarding whether a child should have more than one presumed father under Family Code section 7612, subdivision (c). (See *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, 389 (*J.R.*) [holding that "the court's resolution of competing presumptions under [Family Code] section 7612," subd. (b) "is an issue entrusted to the trial court's

20

Accordingly, we may reverse the court's ruling only if it is " ' " 'arbitrary, capricious, or patently absurd . . . .' " ' [Citation.]" (See *In re Caden C.* (2021) 11 Cal.5th 614, 641.)

G.R. suggests that our review of the order setting aside his presumed father status is de novo because it calls for an assessment of "[w]hether the trial court correctly applied the relevant law . . . ." None of the cases G.R. cites in his opening brief for that proposition involves an order under Family Code section 7612 resolving the competing claims of multiple presumed fathers.[15] Additionally, G.R. seems to argue in his reply that

discretion," italics & capitalization omitted]; *Alexander P., supra*, 4 Cal.App.5th at pp. 496–499 [concluding that a juvenile court did not "abuse [its] discretion" in designating more than one presumed father pursuant to Fam. Code, § 7612, subd. (c)].)

[15]  (Citing *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 524 [holding that "whether the trial court applied the correct burden of proof in evaluating [a] petition" for a restraining order is "review[ed] de novo"]; *In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1157 [holding that "[a]llocation of the burden of proof" at a section 364 review hearing "presents an issue of statutory construction subject to de novo review"]; *Adoption of A.B.* (2016) 2 Cal.App.5th 912, 919 [holding that the construction of Fam. Code, § 7822, which "establishes the grounds for terminating parental rights due to a parent's voluntary abandonment," " 'is a question of law we review independently' "]; *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613 [holding that whether a statute that creates an evidentiary presumption "was properly applied in light of undisputed contrary evidence and, if not, whether the [social welfare agency] had met its duty at the jurisdiction hearing to show by a preponderance of the evidence that [the minors] were children described by one of the subdivisions of section 300, are legal questions subject to de novo review"].) Although G.R.'s reply brief includes several more case citations to

because A.M. did not ask the juvenile court to exercise its authority under section 385, the court's ruling presents a question of law subject to de novo—as opposed to abuse of discretion—review. This argument appears to ignore that section 385 confers upon the juvenile court the authority to reconsider its orders sua sponte, and its exercise of that authority is reviewed for abuse of discretion. (See also *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [" '[T]o demonstrate error, an appellant must supply the reviewing court with some *cogent* argument supported by legal analysis[,]' " italics added].)

We conclude G.R. has failed to demonstrate any abuse of discretion when the juvenile court set aside G.R.'s presumed father status. "In weighing the conflicting interests" of multiple presumed fathers under Family Code section 7612, subdivision (b), " 'the trial court must in the end make a determination which gives the greatest weight to [the child's] well-being.' [Citations.]" (See *J.R.*, *supra*, 212 Cal.App.4th at p. 390.) By setting aside G.R.'s presumed father status after sustaining the subsequent petition, the juvenile court impliedly found that A.M.'s well-being would be best served if her sole presumed father was not the man who had sexually abused her. That conclusion is not arbitrary, capricious, or patently absurd.

_____

support the general proposition that a court's application of the law is subject to de novo review, we need not address these decisions because G.R. does not claim that any of them involved the competing claims of multiple presumed fathers. (See *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case."].)

Similarly, the juvenile court did not act in an arbitrary, capricious, or patently absurd manner in tacitly concluding that removing presumed father status from A.M.'s abuser, and thereby recognizing A.S. and mother as A.M.'s "only two parents[,] would [not] be detrimental to the child."  (See Fam. Code, § 7612, subd. (c).)

G.R. counters with three decisions he contends establish that "a father who otherwise qualified for presumed status [can]not be deprived of that status by the competing claims of another father, solely because section 300 jurisdictional allegations were sustained against him":  (1) *In re Alexander P.*, *supra*, 4 Cal.App.5th 475; (2) *In re J.O.* (2009) 178 Cal.App.4th 139 (*J.O.*);[16] and (3) *L.L.*, *supra*, 13 Cal.App.5th 1302.  These authorities do not support G.R.'s contention that sustained allegations of sexual abuse against a child are not a sufficient basis for setting aside a man's presumed father status under Family Code section 7612, subdivisions (b) and (c).

*Alexander P.* upheld a juvenile court's order designating a stepfather as a presumed father and rejected another parties' attempt to disqualify the stepfather from presumed father status, even though the stepfather had assaulted the mother in the child's presence.  (See *Alexander P.*, *supra*, 4 Cal.App.5th at pp. 479–480, 496.)  The stepfather in that case had not sexually abused the child, and the appellate court discussed this issue in the course of determining whether the stepfather was *disqualified* from presumed father status, and not whether,

---

**16** *In re R.T.* (2017) 3 Cal.5th 622, disapproved of a portion of *J.O.* that is not relevant to this appeal—i.e., *J.O.*'s holding that neglectful conduct must be shown to establish jurisdiction under section 300, subdivision (b)(1).  (See *R.T.*, at pp. 627–628.)

under Family Code section 7612, subdivision (b), he had a *stronger claim* than did another potential presumed father. (See *Alexander P.*, at pp. 495–496 ["While we do not mean to minimize the significance of [the stepfather's] abuse of Mother, we do not find it disqualified him as a matter of law from acquiring presumed parent status. The violence, while committed in the minor's presence, was not directed at the minor."].)[17]

L.L. and *J.O.* held that if a presumed father has "met the requirements of [Family Code] section 7611, subdivision (d), at some point in [the child's] life, his subsequent failure to continue to meet those requirements . . . *d[oes] not rebut* the presumption that he is a presumed father under that statute." (See *L.L.*, *supra*, 13 Cal.App.5th at p. 1312, italics added; *J.O.*, *supra*, 178 Cal.App.4th at pp. 148–151.) In so holding, the *J.O.* court distinguished a case like the one before it with no competing paternity claims from an action in which a court is "resolving the competing claims of two different men, both of whom can establish a presumption of fatherhood under the provisions of the Family Code." (*J.O.*, at p. 150, citing Fam. Code, § 7612, subd. (b); accord, *L.L.*, *supra*, 13 Cal.App.5th at p. 1313 ["[A] presumed father's failure to maintain a relationship with a child or to provide support for them would be relevant in weighing the competing claims of two presumed fathers under [Family Code] section 7612, subdivision (b), but it has no relevance to, or

_____

[17] *Alexander P.* also expressly distinguished the case before it from a decision holding that a man seeking presumed father status who molested the minor could be disqualified from achieving that status. (See *Alexander P.*, *supra*, 4 Cal.App.5th at p. 495, citing *In re T.R.* (2005) 132 Cal.App.4th 1202, 1206–1207, 1210–1212, fn. 5.)

application in, a juvenile court's determination whether a person initially qualifies as a presumed father under [Family Code] section 7611, subdivision (d)."]). This distinction is significant given *J.O.*'s reasoning that where there are no competing claims, rebutting the presumption in Family Code section 7611, subdivision (d) could leave a child with only one parent. (See *J.O.*, at p. 148 ["The Supreme Court [has] repeated the admonition against . . . rebut[ting] a presumption of parenthood arising under [Family Code] section 7611(d) where the result would be to leave a child with fewer than two parents . . . ."].)

Here, we have competing claims to presumed father status. More important, the juvenile court did not find that G.R.'s presumed father status had been rebutted or that he was disqualified from having that designation, but instead concluded that A.S. had the stronger claim to that designation. Indeed, as just noted, *J.O.* and *L.L.* recognized that Family Code section 7612, subdivision (b) authorizes a court to deny presumed father status to a man otherwise qualified for that designation if another man has a competing and stronger claim to that status. (See *J.O.*, *supra*, 178 Cal.App.4th at pp. 149–150; *L.L.*, *supra*, 13 Cal.App.5th at p. 1313.)

Finally, G.R. argues for the first time in his reply that we should reverse the order because the juvenile court "selectively" applied the law "in a punitive fashion to deprive" a biological father "of his presumed father status." (Boldface & capitalization omitted.) In particular, G.R. complains the juvenile court did not invite the parties to revisit A.S.'s presumed father status upon sustaining the jurisdictional allegation that A.S. committed domestic violence against mother in F.M.'s presence. We disregard this belatedly raised argument. (*In re Karla C.* (2010)

25

186 Cal.App.4th 1236, 1269 ["We need not address . . . arguments . . . raised for the first time in [a] reply brief."].)

For the foregoing reasons, we conclude the juvenile court did not err in setting aside its prior order declaring G.R. to be A.M.'s presumed father.

## DISPOSITION

We affirm the juvenile court's order sustaining the subsequent petition and the order setting aside the court's prior ruling designating appellant G.R. as A.M.'s presumed father.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.