Filed 4/29/22  R.M. v. J.J. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| R.M., | C090018 |
| Plaintiff and Respondent, | (Super. Ct. No. SCCVCVSP19144) |
| v. | |
| J.J., | |
| Defendant and Appellant. | |

J.J. (Mother) appeals from an order finding her ex-husband, R.M., is a presumed father of E.S., pursuant to Family Code section 7611, subdivision (d),[1] and also finding he is a third parent pursuant to section 7612, subdivision (c).

On appeal, Mother asserts:  (1) the trial court abused its discretion when it rejected her request to include R.M.'s trial court "outbursts" and the court's admonitions in the settled statement; (2) the presumed paternity finding was not supported by substantial

_____

[1]  Undesignated statutory references are to the Family Code.

1

evidence; (3) this case is not an appropriate action to grant third parent status because it would lead to "warring parents fighting for custody"; (4) granting third parent status would impermissibly circumvent the purpose of stepparent adoption statutes; (5) there is no existing relationship between R.M. and E.S. to support a third parent finding; and (6) section 7612, subdivision (c), is unconstitutional as applied. We disagree with Mother's contentions and affirm the trial court's ruling with respect to R.M.'s parental relationship to E.S.

## I.  BACKGROUND

R.M. and Mother first met in elementary school. They met again when she was seven months pregnant with E.S. E.S. was born in January 2013 in Southern California. R.M. started dating Mother when E.S. was between three and seventh months old. This is when he first met E.S. E.S.'s first birthday party was at R.M.'s mother's house. R.M. was also present for E.S.'s second, third, and fourth birthday parties.

R.M. and Mother married in September 2014. They had two other children together during their marriage. They held themselves out as a family and did not identify E.S. as a stepchild.

During the relationship and marriage, R.M. lived and primarily worked in Southern California, and Mother lived primarily in Northern California. R.M. would come to Northern California regularly and stay with Mother and the children. Mother and the children stayed with R.M. in Southern California on a few occasions.

Mother and R.M. separated in 2017.

In January 2019, R.M. filed a petition pursuant to section 7630 to establish a parental relationship with E.S.

In February 2019, J.S. signed a declaration of paternity with respect to E.S. and first met her in person. No paternity testing was performed. J.S. and E.S. share a last name, but his name was not on E.S.'s birth certificate.

2

In April 2019, the court held a contested evidentiary hearing on R.M.'s petition at which R.M., Mother, J.S., and other witnesses testified.

On May 14, 2019, the trial court issued a ruling explaining that "[t]he evidence from the hearing is very clear and overwhelming—at the time of the hearing, [R.M.] was the only father figure with a[] 'well-established parental relationship' with [E.S.]" The court found R.M.'s exhibits "very telling: 'if a picture is worth a thousand words, [R.M.] has, in effect, written a novel in acknowledging [E.S.] as his child.' [Citation.] [¶] There was no rebuttal that [R.M.] is anything but a presumed parent of [E.S.] [Citation.] [Mother]'s attorney . . . agreed. Here, it is clear, that [Mother] allowed and encouraged [R.M.] to function as [E.S.]'s second parent from sometime after the relationship began until they separated some four years later." The court found the case appropriate to recognize third parent status based on all the relevant factors, including the relationship between R.M. and E.S. and that it "is one where he has fulfilled the child's needs for care and affection for a considerable amount of time."

The court found that, to E.S., R.M. "was her father" and he "provided love and support for [E.S.] as he did for his other two children. . . . Even though much of the relationship can be described as a long distance relationship, it appears from the evidence, that [R.M.] and [E.S.]'s relationship was significant and strong, and extended for most of [E.S.]'s life." The court "consider[ed] relevant the other siblings in the bigger picture of [R.M.] and [E.S]. She is the big sister of the group, and this relationship is a factor as [R.M.] is the father, biological of his two children, and psychological father of [E.S]. Considering the totality of all relevant factors, this court finds that [R.M.] has an existing parental relationship with [E.S.] such that it should be maintained and maintaining that relationship is in her best interest, for it would be detrimental to [E.S.] to sever this relationship. [R.M.] has met his burden of proof to establish a parental relationship pursuant to" section 7612, subdivision (c). The court ordered that judgment enter in R.M.'s favor. The court also ordered R.M. and Mother to share joint legal and

3

physical custody of E.S.  The court ordered E.S.'s primary residence will be with Mother, and R.M. will have visitation with E.S. at the same time, frequency, and duration as with his other two children.

Mother filed a timely appeal.[2]  No respondent's brief was filed.

## II.  DISCUSSION

### A.    Settled Statement

An appellant may elect to use a settled statement as the record of the oral proceedings in the trial court when designated oral proceedings in the trial court were not reported by a court reporter.  (Cal. Rules of Court, rule 8.137(a), (b)(1).)[3]  Mother elected to use a settled statement and contends the trial court abused its discretion by rejecting her request to include R.M.'s trial court "outbursts" and the court's admonitions in the settled statement.

---

[2] Mother asserts the ruling is appealable as an order after judgment, but cites no applicable judgment.  Instead, she cites Code of Civil Procedure section 904.1, subdivision (a)(10), which allows the appeal of an order made appealable by the Family Code, and Family Code section 3554 which allows for the appeal of a judgment or order made under Division 9 of the Family Code (§ 3500, et seq.), entitled "Support."  The May 12, 2019 ruling is not a support order.  It states "Judgment shall enter in [R.M.'s] favor."  The ruling further states, "This Order shall take effect immediately.  [R.M.] is directed to prepare a judgment consistent with this ruling and attach a custody and visitation order consistent with this ruling."  Mother's opening brief indicates no judgment was prepared.  Nonetheless, because the only further action for the court to take on the issue of parenthood is the ministerial act of filing the judgment, we can treat the appeal as from that judgment.  (*Gitmed v. General Motors Corp.* (1994) 26 Cal.App.4th 824, 829, fn. 8.)  A party may also take an appeal from "a final order or judgment in a bifurcated proceeding regarding child custody or visitation rights."  (Code Civ. Proc., § 904.1, subd. (a)(14).)  The order is final with respect to R.M.'s status as a parent of E.S.  We conclude this finding is appealable, and the issues Mother raises related to this finding are cognizable.

[3] Undesignated rule references are to the California Rules of Court.

"A settled statement is a summary of the superior court proceedings approved by the superior court."  (Rule 8.137(a).)

An appellant's proposed statement must "[c]ontain a statement of the points the appellant is raising on appeal" and "[c]ontain a condensed narrative of the oral proceedings."  (Rule 8.137(d)(1) & (2).)  The latter must include "a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant states . . . are being raised on appeal."  (Rule 8.137(d)(2)(A).)  The respondent may file proposed amendments in response to appellant's proposed statement.  (Rule 8.137(e)(1).)  As apparently occurred here, the trial court may "[m]ake any corrections or modifications to the statement necessary to ensure that it is an accurate summary of the evidence and the testimony of each witness relevant to the points that the appellant states . . . are being raised on appeal."  (Rule 8.137(f)(3)(B)(i).)  " 'As long as the trial judge does not act in an arbitrary fashion he has full and complete power over such a record.' " (*Marks v. Superior Court* (2002) 27 Cal.4th 176, 195.)  "Nevertheless, 'under the rules it is the duty of the trial court to settle a proposed statement, not to make one.' " (*Ibid*.)

In issuing a corrected condensed narrative of the oral proceedings, the court explained that R.M.'s "outbursts in relation to statements made by [Mother], her attorney, or any other witness, is not considered by this court to be relevant evidence or testimony. Furthermore, this court did not consider the fact that [R.M.] made such outbursts as evidence or testimony, and the outbursts, including the content of the outbursts, was not a factor considered by the court for purposes of rendering its decision and ruling which is the subject of the appeal."  None of the authorities cited by Mother indicate outbursts or admonitions relating to outbursts must appear in a settled statement.  For instance, in *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, we stated, "In the settled statement, the court noted, 'Throughout this trial, Mother acted in a very abnormal manner and may be depressed at this time.' " (*Id*. at p. 1287.)  This part of the settled statement was a quote from the trial court's order.  (*Id*. at p. 1279.)  The case does not address whether outbursts or

5

admonitions must be included as part of the summary of the evidence and testimony. (See Rule 8.137(d)(2)(A).) Moreover, Mother does not cite her proposed condensed narrative of oral proceedings such that we can discern what outbursts or admonitions, if any, she proposed that were refused by the trial court. Rather, to the extent Mother suggests what outbursts she had in mind, she relies on the declaration she submitted in support of her objections to the corrected condensed narrative of the oral proceedings and not any actual proposals. In ruling on those objections, the court explained, Mother "attempts to interject editorial comment and facts not presented during the evidentiary hearing in her condensed narrative of oral proceedings." Mother has failed to demonstrate the trial court abused its discretion in settling the statement.

B.      *Presumed Parent Finding*

"The Uniform Parentage Act (UPA) (§ 7600 et seq.) 'provides the framework by which California courts make paternity determinations. (§ 7610, subd. (b).)' [Citation.] Section 7611 sets forth various rebuttable presumptions for determining a child's natural parent. [Citation.] A presumption under section 7611 generally 'is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence.' (§ 7612, subd. (a).)" (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1309-1310.) "A person who claims entitlement to presumed parent status has the burden of establishing by a preponderance of the evidence the facts supporting the entitlement." (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 774.)

Mother argues no substantial evidence supports the presumed parent finding. The trial court's ruling indicated it found R.M. to be a presumed parent based on section 7611, subdivision (d): "The presumed parent receives the child into their home and openly holds out the child as their natural child." The court stated Mother's own counsel agreed with that conclusion at the end of the evidentiary hearing.

"We review the trial court's factual findings, including its findings that [R.M.] received the child[] into [his] home and openly held [her] out as [his] natural child[],

6

under the substantial evidence standard. [Citations.] ' "Under that standard, we must consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." ' [Citation.] To the extent we are called upon to review the trial court's legal interpretation of the 'receiving' and 'holding out' requirements set forth in section 7611[, subdivision ](d), we shall exercise our independent legal judgment." (*S.Y. v. S.B.* (2011) 201 Cal.App.4th 1023, 1031, italics added.)

"When determining whether the person has met the statutory requirements of receiving the child into his or her home and openly holding the child out as his or her own, the court may consider a wide variety of factors, including the person's provision of physical and/or financial support for the child, efforts to place the person's name on the birth certificate, efforts to seek legal custody, and the breadth and unequivocal nature of the person's acknowledgement of the child as his or her own. [Citation.] No single factor is determinative; rather, the court may consider all the circumstances when deciding whether the person demonstrated a parental relationship by holding out the child as his or her own and assuming responsibility for the child by receiving the child into his or her home." (*R.M. v. T.A.*, *supra*, 233 Cal.App.4th at p. 774.)

According to the settled statement, R.M. testified that after he married Mother, she lived with E.S. in his home in Southern California for a month. Mother eventually moved to Northern California and bought a home; R.M. would come north every other month for 10 days or so. When R.M. was in Northern California, he, Mother, E.S., and eventually their other two children all lived together. From around December 19, 2015, to around January 22, 2016, the family lived in R.M.'s house in Southern California. In

7

both 2016 and 2017, Mother made two trips to Southern California. R.M. testified that he treated E.S. as if she was his child and not his stepchild and held her out as his child and not his stepchild. Mother also testified that they introduced themselves as a family and E.S. was not identified as a stepchild. Mother testified she did not want E.S. singled out.

According to the settled statement, R.M. testified that he went to a number of doctor appointments for E.S. and was present for three or four of the times she got shots. He made several cash payments toward E.S.'s unpaid medical bills. His mother invested in a college fund for E.S. According to R.M., Mother lives off her deceased stepfather's inheritance, "but she didn't budget the money very well." R.M. testified that he sent money to Mother to support the entire family, including E.S. Before they were married, he would deposit $800-1,000 per month in her bank account. Later, they opened a joint account, and he deposited the same amount each month. When he was in Northern California, the family would go to Walmart, and he would tell Mother to get whatever she wanted or needed for all of the children. They usually spent between $200 and $300. At the time of the hearing, R.M. was behind on child support payments. The record suggests these payments are based on the separate proceedings relating to R.M. and Mother's other two children.

R.M. submitted as evidence family photographs and a picture of his tattoo of an "E" for E.S.

Mother argues evidence of certain activities on the part of R.M. were missing, such as evidence he "provided actual caretaking such as diaper changes, feeding, dressing, playing, participating in parenting decisions, or potty training." She also alleges R.M. submitted no evidence of specific child-related purchases pertaining solely to E.S. or that he listed her as his daughter on any insurance policies. Mother complains R.M. did not assert custody rights promptly. None of these allegations are dispositive because no particular items of evidence are required; indeed, no factor is determinative. (*R.M. v.*

8

*T.A., supra*, 233 Cal.App.4th at p. 774.)  Further, we cannot reweigh the evidence. Mother argues that because the evidence demonstrates E.S. only spent Father's Days with R.M. until the dissolution of their marriage, his doing so was only incidental to his relationship with Mother.  The court was not required to make this inference.  " ' "Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the judgment." ' " (*S.Y. v. S.B., supra*, 201 Cal.App.4th at p. 1031, italics added.)  Because there was, we must affirm the court's finding that R.M. was a presumed parent under section 7611, subdivision (d).

C. *Third Parent Status*

As set forth above, the trial court found R.M. established he was E.S.'s father under section 7612, subdivision (c).  This provision provides:  "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child.  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time.  A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage." (§ 7612, subd. (c).)  "This statutory provision 'allows a court to recognize three parents only in "rare cases" where a child truly has more than two parents.' [Citation.]  Specifically, ' "an appropriate action" for application of section 7612, subdivision (c) requires a court to find an *existing*, rather than *potential*, relationship between a putative third parent and the child, such that "recognizing only two parents would be detrimental to the child." ' " (*M.M. v. D.V*. (2021) 66 Cal.App.5th 733, 742.)

9

"We review the juvenile court's finding of detriment within the meaning of . . . section 7612, subdivision (c) for substantial evidence." (*In re M.R.* (2017) 7 Cal.App.5th 886, 899.)

### 1.    *Non-Statutory Criteria*

Mother argues this is "not an appropriate action to grant third parent status" because to do so would: (1) lead to "warring parents fighting for custody," and (2) circumvent the purpose of stepparent adoption.  Neither argument is based on the language of the statute.  The argument that finding a stepfather to be a presumed parent " 'circumvents the purpose of stepparent adoption statutes' " was rejected in *In re Alexander P.* (2016) 4 Cal.App.5th 475, which also affirmed a third parent finding:  "In considering this argument, it must be remembered that adoption and presumed parent status serve different purposes.  Adoption is available generally to stepparents, while designation of a presumed parent normally occurs in the context of a dependency proceeding.  Given the potentially critical importance of a presumed parent in the life of a child who is subject to a dependency proceeding, we see no reason to place roadblocks to the achievement of that status by otherwise qualified persons, including stepparents, by imposing requirements not found in the Family Code provisions bearing on presumed parent status.  In the absence of an indication by the Legislature that adoption is intended to be the exclusive means by which a stepparent is to be granted custodial status, we find no basis for denying presumed parent status to otherwise qualified stepparents." (*Id.* at pp. 498-499.)  We see no reason the answer is different outside of the dependency context.  In any context, "in construing this, or any statute, we may not broaden or narrow the scope of the provision by reading into it language that does not appear in it or reading out of it language that does." (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.)

Likewise, we cannot read into section 7612, subdivision (c), a requirement that it not apply to parents who are "warring." (See *C.A. v. C.P.* (2018) 29 Cal.App.5th 27, 36 ["If the Legislature wanted to limit the bill's application to cases where no stable

10

marriage existed, it easily could have said so"].) Nor does the Legislative history cited by Mother suggest such a requirement should be read in. Rather, it explains: "While more than two parents may be highly desirable in a dependency case, where more loving parents may help keep a child out of a group home or other foster care placement, multiple parents in a family law proceeding, where warring parents are fighting for custody, could be more troublesome. This bill addresses that concern in two ways. First, as discussed above, it allows a court to recognize more than two parents only when it would be detrimental to the child not to do so. The bill provides courts with guidance on finding such detriment, by requiring the court to consider all relevant factors, including the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical and psychological needs for a substantial period of time." (Assem. Com. on Judiciary, analysis of Sen. Bill No. 274 (2013-2014 Reg. Sess.) as amended May 14, 2013, p. 7.) Mother's assertion that the Legislature "rejected" the notion that third party parent status can apply when warring parents are involved is incorrect. Rather, the Legislature recognized many proceedings *would* involve warring parents fighting for custody and attempted to address the "trouble" this can present through the requirement that the court find detriment. The Legislature did not suggest parents who are fighting over custody may never satisfy the requirements for third parent status under section 7612, subdivision (c). Again, we cannot insert requirements where they do not exist. We thus turn to the arguments raised by Mother that relate to the actual statutory requirements for recognizing a third parent under section 7612, subdivision (c).

     2.    *Statutory Criteria*

Mother argues there was no existing relationship between R.M. and E.S. such that it would cause her "devastating psychological and emotional impact" to have only two parents. The quoted language comes from the legislative history of section 7612, subdivision (c), which explains that " '[s]eparating a child from a parent has a devastating psychological and emotional impact on the child.' " (*In re Donovan L.* (2016) 244

11

Cal.App.4th 1075, 1090.) The statute itself does not require a specific finding of "devastating psychological and emotional impact on the child." In *In re Donovan L.*, the juvenile court found the child " 'does not have a strong relationship' " with his biological father and ordered visits to be supervised because the biological father " 'has to develop a relationship,' " but nonetheless found the biological father to be a third parent under section 7612, subdivision (c). (*In re Donovan L., supra*, at p. 1092.) The appellate court held this was error. (*Ibid.*) No such error occurred here. The court found R.M. had an existing parental relationship with E.S. Mother attacks this finding by again asking us to reweigh the evidence as she did with respect to the presumed parent finding. This approach remains unavailing.

Additionally, Mother argues R.M. took no steps to maintain his relationship with E.S. after separation. The settled statement indicates R.M. continued to see E.S. at least periodically. The court's ruling states, "after the separation of the parties, [Mother] made every effort to exclude [R.M.] from [E.S.]'s life. He only saw her infrequently. He testified that he was told by a number of people, including his attorney at the time, that he did not have any legal means to assert being a father to [E.S.]" Mother argues the court's statement that she made every effort to exclude R.M. from E.S.'s life is not supported by substantial evidence. We are not persuaded. In discussing the settled statement, the court explained, "I recall some of the reasons why we ended up in court with this particular case was [R.M.] had wanted to see [E.S.] and that [Mother] was prohibiting that post-separation and limiting him to only their two biological children." R.M.'s petition supports the court's recollection. The trial court also explained that it recalled testimony to that effect and that this was the conclusion it came to based on the testimony. At a minimum, it is reasonable to infer from what is in the settled statement that after the dissolution of their marriage, Mother limited contact between R.M. and all of their children to what was necessary or required. For example, the settled statement summarizes Mother's position that she did not want the children at R.M.'s home, but

states they stayed there when she went to urgent care.  Further, Mother would sometimes not bring E.S. when she met R.M. for court ordered visitation of their other children.  Substantial evidence supports the conclusion that R.M. did take steps to maintain his relationship with E.S.

But regardless of the steps R.M. took after separation or any diminished contact, a presumed father does not lose his status merely because of a temporal gap in visitation, and "[w]hether the bond remains intact . . . is a fact-bound decision for the trial court to make."  (*C.A. v. C.P., supra*, 29 Cal.App.5th at p. 38.)  Here, the court found that despite more limited contact, there was still an existing parental relationship between R.M. and E.S.  Further, the court found that "[c]onsidering the totality of all relevant factors, this court finds that [R.M.] has an existing parental relationship with [E.S.] such that it should be maintained and maintaining that relationship is in her best interest, for it would be detrimental to [E.S.] to sever this relationship."  This ultimate finding was supported by substantial evidence:  "As discussed above, the minor has an established, parental relationship with [R.M].  Preserving such a relationship is precisely the purpose of the amendment to section 7612 to permit multiple presumed parents."  (*In re Alexander P.,* *supra*, 4 Cal.App.5th at p. 498.)

With respect to the court's detriment finding, Mother also argues E.S.'s relationship with her biological father was irrelevant to her relationship with R.M.  It was not.  (*Martinez v. Vaziri* (2016) 246 Cal.App.4th 373, 387-388.)  Additionally, Mother contends "the court's concern regarding E.S.'s sibling relationship is misplaced" because children in blended families often visit their respective fathers separately from half-siblings.  This does not mean that it is error to consider the third party's relationship with siblings.  Mother has failed to demonstrate any basis to disturb the court's detriment finding.  As such, we must affirm the courts finding that it would be detrimental not to recognize R.M. as a parent under section 7612, subdivision (c).

### 3. *Constitutional Challenge*

Mother argues section 7612, subdivision (c) is unconstitutional as applied because "[a]dding a former stepfather as a third parent over the objection of custodial parents violates their rights to make decisions regarding the care, custody, and control of their children and eviscerates the presumption that fit parents act in their children's best interests." "But what [Mother] overlook[s] is that [R.M.], too, is a parent." (*C.A. v. C.P., supra*, 29 Cal.App.5th at p. 43.) Mother argues *C.A.*'s rejection of this constitutional argument was not dispositive of her claim because in that opinion this court did not consider her assertion that a person is not a parent entitled to constitutional rights until after the third parent finding, and that to allow such a finding by less than clear and convincing proof infringes on parental rights. The authorities Mother cites do not support these alleged distinctions. None of these authorities suggest the standard used to declare someone a parent, rather than the distinction between parents and nonparents, is relevant. Indeed, other courts have rejected similar claims. (See, e.g., *R.M. v. T.A., supra*, 233 Cal.App.4th at pp. 776-778 [rejecting argument that standard for establishing presumed parent status should be clear and convincing evidence to protect mother's right to form single parent family].) We reject Mother's constitutional claim and affirm the trial court's third parent status ruling.

14

## III. DISPOSITION

The court's May 14, 2019 ruling is affirmed with respect to R.M.'s parental relationship to E.S.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BLEASE, Acting P. J.

/S/

_____

HULL, J.